PRIMERICA LIFE INSURANCE COMPANY
and Mary Jane Watson *v.* Ronda Gale WATSON

04–1260                                    207 S.W.3d 443

Supreme Court of Arkansas
Opinion delivered April 21, 2005

*Watts, Donovan & Tilley, P.A.*, by: *Richard N. Watts* and *Staci Dumas Carson*, for appellant, Primerica Life Insurance Company.

*Killough Law Firm*, by: *Larry Killough, Jr.*, for appellant, Mary Jane Watson.

*Lightle, Raney, Bell & Simpson, LLP*, by: *A. Watson Bell*, for appellee.

DONALD L. CORBIN, Justice. This case involves the determination of the rightful beneficiary to a life insurance policy issued to Gary Watson, deceased. Appellee Ronda Gale Watson is Gary's widow. Appellant Mary Jane Watson is his ex-wife. Following a jury trial, the White County Circuit Court entered an order declaring Ronda to be the beneficiary and awarding her the proceeds of Gary's life insurance. Thereafter, the trial court ruled that Gary's insurer, Appellant Primerica Life Insurance Company, failed to pay Ronda's claim in a timely manner, and ordered it to pay a twelve-percent penalty plus Ronda's attorney's fees, pursuant to Ark. Code Ann. § 23-79-208 (Repl. 2004). Both Mary Jane and Primerica have appealed. Our jurisdiction of this case is pursuant to Ark. Sup. Ct. R. 1-2(b)(6), as it requires us to interpret section 23-79-208. We affirm as to Mary Jane, but reverse as to Primerica.

The record reflects that in November 1987, Gary purchased a life insurance policy from Primerica in the amount of $100,000. He also purchased a spouse rider and a child rider. At the time, Gary was married to Mary Jane, and he named her the primary beneficiary, with his daughter being the contingent beneficiary.

Gary and Mary Jane divorced in March 1993. Gary then married Ronda in July 1994. They were married for nine years, before Gary died from Lou Gehrig's disease on July 25, 2003.

In August 1996, while Gary was paying his life insurance premium, he commented to Ronda: "Well, I guess I need to change the beneficiary on my policy, since I'm going to keep you." Gary then asked Ronda to get him the telephone, and he called Primerica. Ronda heard Gary say that he was divorced and remarried, and that he needed to change the beneficiary on his policy. She said that he also stated that he needed to change the spouse rider and child rider.

A few weeks later, Gary received a policy-change application from Primerica. On that form, he listed Ronda as his new spouse. According to Ronda, who was present when he filled out the form, Gary noticed that there was no specific beneficiary form, so he wrote on the front page of the policy-change application "change name of spouse & change name of child rider."

Immediately following Gary's death in July 2003, Ronda spoke to the funeral home about arrangements. Representatives of the funeral home asked if Gary had life insurance, and Ronda stated that he did. They then indicated that if Ronda would assign the proceeds to them, they would file a claim with the insurance company, deduct the funeral expenses, and then pay Ronda the difference. Primerica received the funeral home's claim on July 31.

Sometime in August, Ronda spoke with Michael Lynn, a claims representative for Primerica. Lynn told her that she was not the named beneficiary on the policy, but that Mary Jane was. Lynn then told her that he would look into the matter. After several conversations with Lynn, Ronda gave a copy of the policy to Tommy Bowers, a local insurance agent, and asked him to see if he could resolve the matter. Bowers subsequently told Ronda that the policy was "frozen," meaning that he could not get any information on it.

Ronda later had a conversation with Lynn, in which he told her that he could see Gary's intentions, but that it was not clear on paper. On September 11, Lynn called Ronda and asked her to get a copy of Gary's and Mary Jane's divorce decree. Ronda faxed it to him. The following day, Ronda received a call from a Primerica representative stating that everything was in order and that the company was about to cut her a check when Mary Jane called and

claimed that she was the beneficiary. Primerica then advised Ronda to seek a settlement with Mary Jane, or it would file an action in interpleader. On September 15, Ronda told Primerica that a settlement could not be reached.

On September 25, before Primerica could file its action in interpleader, Ronda filed suit against Primerica and Mary Jane, asking the court to declare her the rightful beneficiary. The suit also alleged a claim of negligence against Primerica for failing to properly advise Gary about changing the beneficiary, for failing to provide the necessary forms, and for failing to follow Gary's instructions to name Ronda as his beneficiary. Ronda also sought the statutory penalty and attorney's fees from Primerica, pursuant to section 23-79-208.

Primerica filed an answer and counterclaim offering to interplead the funds of the policy and place them into the registry of the court. Primerica later sought and was granted summary judgment on Ronda's negligence claim. Thereafter, the case was tried to a jury, which found that Ronda was the beneficiary of the policy. Following a hearing held two weeks later, the trial court found that Ronda was entitled to the statutory penalty and attorney's fees. Judgment was entered on August 2, 2004, awarding Ronda the face amount of the policy plus interest, for a total of $106,887.33, plus a $12,000.00 penalty and $35,272.81 in attorney's fees.

Both Mary Jane and Primerica have appealed. For her sole point on appeal, Mary Jane argues that the trial court erred in allowing certain hearsay statements concerning Gary's intent to make Ronda the beneficiary of his life insurance and his belief that he had done so. Primerica argues that the trial court erred in assessing the statutory penalty and attorney's fees against it, pursuant to section 23-79-208. We address each appeal separately.

*Statements of Gary's Intention and Belief*

Mary Jane argues that the trial court erred in allowing Ronda to testify about what she heard Gary tell a Primerica representative in the August 1996 telephone conversation. She also argues that it was error to allow Ronda to present testimony from five other witnesses about what Gary had told them about Ronda being the beneficiary of his life insurance. She argues that

this evidence, especially that from the five other witnesses, was irrelevant and was unfairly prejudicial.[1] She seeks a new trial that excludes this testimony.

The sole issue presented to the jury was whether Gary had changed his life insurance policy in a way that named Ronda as the beneficiary. The jury was instructed as follows:

> The parties do not dispute that Gary Newman Watson and Primerica Life Insurance Company entered into an insurance contract.
>
> The parties do not dispute that Primerica Life Insurance Company issued a contract of insurance which insured the life of Gary Watson for $100,000.00. The initial policy named Mary [Jane] Watson as beneficiary. Ronda Gale Watson contends Gary Watson changed the contract of insurance to name her as the beneficiary. Ronda Gale Watson has the burden of proving, pursuant to Arkansas law, that the insurance contract was changed to her name as the beneficiary.
>
> You are instructed that the law of the State of Arkansas is that an insured must substantially comply with the provisions of a life insurance policy pertaining to a change of beneficiary, and that when an insured does everything within his power to make a change of beneficiary pursuant to the terms of the policy, a change of beneficiary is presumed.

Mary Jane argues that because the only issue for the jury to consider was whether Gary did everything in his power to change the beneficiary from her to Ronda, testimony as to his intention and belief was not relevant. We disagree.

We note at the outset that trial courts are accorded wide discretion in evidentiary rulings, and we will not reverse such rulings absent a manifest abuse of that discretion. *Mays v. St. Pat Properties, LLC*, 357 Ark. 482, 182 S.W.3d 84 (2004); *Barker v. Clark*, 343 Ark. 8, 33 S.W.3d 476 (2000); *Jackson v. Buchman*, 338

---

[1] In her brief on appeal, Mary Jane seems to concede that the hearsay testimony from Ronda was not unfairly prejudicial, in that it was counterbalanced by her own testimony about statements that Gary had made to her about her being the beneficiary. Mary Jane's brief reflects her conclusion that the jury likely discounted both women's testimony and looked to other evidence.

Ark. 467, 996 S.W.2d 30 (1999). "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c). As a rule, hearsay is not admissible except as provided in our rules of evidence. *See* Ark. R. Evid. 802. Exceptions to this rule are found in Ark. R. Evid. 803 and 804. The exception found in Rule 803(3) is applicable in this case and provides:

> *Then Existing Mental, Emotional, or Physical Condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Under Rule 803(3), a declarant's statement that he or she intends to do something in the future is admissible to prove the truth of the matter asserted. *See Wyles v. State*, 357 Ark. 530, 182 S.W.3d 142 (2004); *Nicholson v. State*, 319 Ark. 566, 892 S.W.2d 507 (1995). Gary's statement to Ronda, "Well, I guess I need to change the beneficiary on my policy, since I'm going to keep you," falls squarely within this exception, as it reflected Gary's intention to change the policy. Similarly, the statement that Gary made to his stepson, Chris Bargiel, that he was buying insurance and that Ronda would be the beneficiary, falls within this exception. The trial court did not err in allowing testimony about these statements.

Nor did the trial court err in allowing Ronda to testify about Gary's conversation to a Primerica representative, in which she heard Gary tell the representative that he was divorced and remarried, and that he needed to change the beneficiary on his policy, as well as the spouse rider and child rider. This statement manifested Gary's intent to change the beneficiary on his policy and was therefore admissible under the hearsay exception found in Rule 803(3). Moreover, this statement was highly relevant to the issue whether Gary had done everything in his power to change the beneficiary on his policy.

Finally, the testimony given by Velton Fulton, Marvin Hughes, Thelma Hare, and Judy Monday, regarding statements that Gary made to them that Ronda would have the proceeds of his life insurance to pay off the debts of his business,

was also admissible under Rule 803(3). These statements evidenced Gary's belief that Ronda was the beneficiary of his life insurance policy and his intention that she be entitled to the proceeds of that policy. Generally speaking, statements of a declarant's belief are not admissible under Rule 803(3), unless the statements relate to the execution, revocation, identification, or terms of the declarant's will. This court has recognized that provisions in life insurance contracts with reference to beneficiaries or changes in beneficiaries are in the nature of a last will and testament and, therefore, "are construed in accordance with the rules applicable to the construction of wills." *See American Found. Life Ins. Co. v. Wampler*, 254 Ark. 983, 986, 497 S.W.2d 656, 658 (1973). As such, the testimony from the foregoing witnesses was properly admitted by the trial court under Rule 803(3). We thus affirm Mary Jane's appeal.

### Statutory Penalty and Attorney's Fees

For its appeal, Primerica argues that the trial court erred in assessing a twelve-percent penalty and attorney's fees against it under section 23-79-208. Alternatively, it argues that the trial court erred in the amount of attorney's fees it awarded.

Section 23-79-208 provides in pertinent part:

> (a)(1) *In all cases in which loss occurs and the* cargo, property, marine, casualty, fidelity, surety, cyclone, tornado, *life*, accident and health, medical, hospital, or surgical benefit *insurance company* and fraternal benefit society or farmers' mutual aid association or company liable therefor *shall fail to pay the losses within the time specified in the policy after demand is made, the person, firm, corporation, or association shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.* [Emphasis added.]

This provision is penal in nature and is therefore strictly construed in favor of the party sought to be penalized. *State Farm Mut. Auto. Ins. Co. v. Thomas*, 316 Ark. 345, 871 S.W.2d 571 (1994); *Clark Center, Inc. v. National Life & Accident Ins. Co.*, 245 Ark. 563, 433 S.W.2d 151 (1968). It should not be held to apply except in cases that come clearly within the statute. *National Fire Ins. Co. v. Kight*, 185 Ark. 386, 47 S.W.2d 576 (1932).

The penal nature of the statute is directed against the unwarranted delaying tactics of insurers. *Thomas*, 316 Ark. 345,

871 S.W.2d 571; *Simmons First Nat'l Bank v. Liberty Mut. Ins. Co.*, 282 Ark. 194, 667 S.W.2d 648 (1984). However, not every delay is an unwarranted delaying tactic. For example, this court has held that an insurer is allowed a reasonable time to investigate a claim where the insurer in good faith believes that an investigation is necessary before making payment. *Clark Center, Inc.*, 245 Ark. 563, 433 S.W.2d 151. This court has also held that where there is a proper question as to the rightful beneficiary, which the parties cannot determine or settle among themselves, the insurer is not responsible for the statutory penalty and attorney's fees for the delay resulting from filing a complaint in interpleader. *See Dennis v. Equitable Life Assur. Soc.*, 191 Ark. 825, 88 S.W.2d 76 (1935).

Primerica urges that it did not engage in unwarranted delaying tactics in this case. It contends that it stood ready, willing, and able to pay the proceeds of the policy, but that when it was faced with claims from both Ronda and Mary Jane, it advised the two claimants that if they could not work out a settlement, it would file an action in interpleader and let the court determine who was the rightful beneficiary. It contends that both claims were legitimate, as Mary Jane was the beneficiary named in the policy, while Ronda was the deceased's widow. It contends that if it had paid one claimant to the exclusion of the other, it would have placed itself in the dangerous position of exposing itself to liability to both claimants. It contends further that by interpleading the parties and requesting that the funds be deposited into the registry of the court, it denied no one recovery. Rather, it merely took the position that it wanted to pay, but could not determine the rightful payee. We agree.

Our holding in *USAble Life v. Fow*, 307 Ark. 379, 820 S.W.2d 453 (1991), is instructive. There, the insurer issued a group life insurance policy to the deceased, in which his wife was the named beneficiary. Prior to his death, the deceased executed a change of beneficiary form naming his daughters as his beneficiaries. Upon his death, the daughters submitted a written claim for the proceeds of the policy. The deceased's wife also made a claim for the proceeds. In a telephone call to the insurer, the wife threatened to institute a lawsuit if she did not receive the proceeds. The insurer requested the wife to provide documentation in support of her claim, but she failed to do so. Thereafter, the insurer filed a complaint in interpleader asking the trial court to determine the beneficiaries as among the two daughters and the wife. The daughters objected and counterclaimed against the insurer for the

statutory penalty and attorney's fees. The trial court ruled in favor of the daughters. On appeal, the insurer argued that the fact that it never denied liability and promptly filed a complaint in interpleader absolved it of any liability for the statutory penalty or attorney's fees. This court disagreed, holding:

> In this case, USAble Life's policy provided that it had 90 days within which to pay claims after it had been notified of a loss. Although USAble Life has never denied liability for this claim, *it is undisputed that it had in its files the change of beneficiary form naming [the daughters] as current beneficiaries of [the deceased's] policy.* Further, *it is clear that USAble Life did not make an investigation as to the proper party for payment* or make payment of the policy proceeds to [the daughters] as named beneficiaries, *but chose instead to initiate an action for interpleader apparently based on [the wife's] verbal claims and the threat of a lawsuit.* By doing so, USAble Life avoided what it considered to be a potential lawsuit by filing an action in interpleader, *while at the same time placing the burden on [the daughters] to bear legal expenses in perfecting their claim to the monies that were rightfully theirs as current beneficiaries under the policy.*

*Id.* at 381-82, 820 S.W.2d at 455 (emphasis added).

■ In the present case, unlike in *Fow*, the insurer, Primerica, did not deny payment to the named beneficiary based only on a verbal threat of lawsuit from another party. Although Ronda was later determined to be the rightful beneficiary, at the time of her claim, she was not the named beneficiary, Mary Jane was. Primerica viewed the policy-change application executed by Gary in August 1996 as only changing the name of the spouse and the spouse rider from Mary Jane to Ronda, but not changing the designation of Mary Jane as beneficiary. Once Mary Jane made a claim on the proceeds of the policy, Primerica decided to interplead the funds into the registry of the court and allow the court to determine the rightful beneficiary, unless Ronda and Mary Jane could work out a settlement. Upon being informed that the parties could not reach a settlement, Primerica obtained local counsel to file the complaint in interpleader. Before it could do so, however, Ronda filed suit against Primerica and Mary Jane. We do not view the actions taken by the insurer in this case as being tantamount to the kind of unwarranted delaying tactics envisioned by section 23-79-208.

█ Nor do we agree with Ronda's suggestion that section 23-79-208 is triggered *anytime* a claimant has to file suit to recover the insurance proceeds, regardless of the factual circumstances. The statute contains no such language, and we will not read into it that which is not there. As stated above, section 23-79-208 is penal in nature and is therefore strictly construed by this court in favor of the party sought to be penalized. Strict construction means that nothing is taken as intended which is not clearly expressed. *See Hunt v. State,* 354 Ark. 682, 128 S.W.3d 820 (2003); *Wilson v. Neal,* 341 Ark. 282, 16 S.W.3d 228 (2000), *cert. denied,* 532 U.S. 919 (2001).

█ Finally, Ronda asserts that Primerica's claim that it could have been exposed to having to pay the claim twice had it not chosen to pursue interpleader is not valid. She asserts that Primerica could have paid the proceeds to her and then invoked the protection from double exposure provided in Ark. Code Ann. § 23-79-125 (Repl. 2004). That section provides:

> (a) Whenever the proceeds of or payments under a life or accident and health insurance policy or annuity contract become payable in accordance with the terms of the policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment of the amount in accordance with the terms of the policy or contract or in accordance with any written assignment thereof, *the person then designated in the policy* or contract or by the assignment *as being entitled to the benefits shall be entitled to receive the proceeds or payments and to give full acquittance therefor.*

> (b) *The payments shall fully discharge the insurer from all claims under the policy* or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy or contract. [Emphasis added.]

We agree with Primerica that the protection offered by subsection (b) is only available when the insurer pays the proceeds over to "the person then designated in the policy . . . as being entitled to the benefits," as provided in subsection (a). In this case, it was Mary Jane, not Ronda, who was the person then designated in the policy as being entitled to receive the proceeds. Thus, contrary to Ronda's urging, Primerica's payment to Ronda would not have discharged it from having to pay a claim from Mary Jane.

We thus reverse the trial court's award of a twelve-percent penalty and attorney's fees to Ronda, as we hold that the provisions of section 23-79-208 were not triggered by Primerica's actions. Accordingly, it is not necessary to address Primerica's alternative argument that the amount of attorney's fees was excessive.

Affirmed in part; reversed in part.

GLAZE, J., not participating in the opinion.

DICKEY, J., not participating.