2012 Ark. App. 632

**Laura E. EFT, Individually and as Trustee of the Rogers Family Revocable Trust U/D March 19, 1993; and Carl F. Eft, Appellants**

v.

**Jeneal B. ROGERS, Appellee.**

**No. CA 12–135.**

Court of Appeals of Arkansas.

Nov. 7, 2012.

2

Kelley Law Firm, a Professional Limited Liability Company, Rogers, by: Glenn E. Kelley, for appellants.

Watkins, Boyer, Gray & Noblin, PLLC, Rogers, by: Bill Watkins, for appellee.

RITA W. GRUBER, Judge.

Appellants bring this appeal from the circuit court's denial of their petition for reformation of the Rogers Family Revocable Trust—created in March 1993 by Dale Rogers and his wife, Mary Jane Rogers. Appellants are Laura E. Eft (Mary Jane's niece), acting individually and as trustee, and Carl F. Eft, Laura's husband. Appellee, Jeneal B. Rogers, is the widow of John Rogers, who was Dale and Mary Jane's only child. Appellants raise two points on appeal: (1) that the trial court erred by excluding extrinsic evidence regarding Mary Jane's motive, intent, plan, and statements against her interest; and (2) that the trial court erred by failing to find clear and convincing evidence sufficient to reform the trust. We affirm the denial of appellants' petition.

Dale and Mary Jane were the grantors and co-trustees of the 1993 trust, which was created with the counsel of attorney George Rhoads. The trust provided that John was successor trustee; it also provided that upon the death of the remaining grantor, the successor trustee would distribute $10,000 to appellee and the residue would go to John or his issue. When Dale died in July 2005, Mary Jane became the sole trustee. She met with Rhoads in October 2006 about estate planning. He drafted a first amendment to declaration of trust, which Mary Jane executed the same month, appointing herself and John as co-trustees and the survivor of them as successor trustee.

John died in April 2007, and Mary Jane again met with Rhoads. In May 2007, she executed a second amendment to declaration of trust and a last will and testament; again, the documents were prepared by attorney Rhoads. The second amendment appointed Mary Jane as trustee, appellee as successor trustee, and Arvest Trust Company as second successor trustee. Upon the grantor's death, the trustee was to distribute $50,000 to appellants "or the survivor of them," and to distribute the residue of the trust property to appellee; should appellee predecease the grantor or die prior to the distribution, her share was to be paid to appellants or their survivor. The 2007 will appointed appellee as executrix and Arvest as successor executor, and it included a general bequest of Mary Jane's property to the existing trust, save items or personal property specifically disposed of by an adjunct list. (A list of personal items in a March 2008 addendum specified that jewelry, furniture, and a car were bequeathed to appellant Laura and that a desk and chair were to go to Jamie Lea Brust, Mary Jane's housekeeper.)

In April 2007, after undergoing rehabilitation for a broken pelvis, Mary Jane returned to her home and appellee moved in. She resided there until August 2009, when she moved out at Mary Jane's request. In September 2008, Mary Jane again met with Rhoads to make changes to her estate plan; she again executed documents he prepared for her. The third amendment to trust retained Mary Jane as trustee; it named appellant Laura as successor trustee, appellant Carl as second successor trustee, and Arvest as third successor trustee.[1] Also in September 2008, Mary Jane revoked a 2007 power of attorney, thereby removing appellee as her attorney in fact. Executing a new power of attorney, durable power of attorney for health-care decisions, and advance medical directive/living will declaration, Mary Jane appointed appellant Laura as her attorney in fact.

Brust (the housekeeper) accompanied Mary Jane on an unscheduled trip to Rhoads's office in September 2010. Mary Jane obtained a copy of her will, went outside to review it in her car, and—upon seeing that appellee remained as executrix—returned to the office to request changes. Rhoads went to his computer and prepared a will appointing appellant Laura as executrix, appellant Carl as successor executor, and Arvest as second successor executor. Mary Jane signed the will, witnessed by Rhoads and Judy Sears, his assistant.

Mary Jane died on November 18, 2010. Appellant Laura called Rhoads on November 22, 2010, seeking advice on her duties as successor trustee of the trust. Rhoads met with appellants that afternoon. Upon learning that the third amendment had not changed the distribution of the trust and that appellee remained as residual beneficiary under the second amendment, appellants told Rhoads that this was contrary to Mary Jane's intention that they be the residual beneficiaries.

Appellants filed their petition for reformation of trust on December 20, 2010, and an amended petition on May 19, 2011. They alleged that Mary Jane believed, following the execution of her last will and testament in September 2010, that she had removed appellee both from any decision-making role relating to the estate plan and as a beneficiary. Appellants requested that the trust be reformed under the following statutory provision:

> A court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.

Ark.Code Ann. § 28-73-415 (Repl.2012). Specifically, appellants alleged that the lack of modifications to the trust's disposition of assets was contrary to the intentions of Mary Jane. Appellee filed an answer asserting that Mary Jane had suffered from legal incapacity and had been subject to undue influence.

After conducting a bench trial, the circuit court issued a letter opinion on October 28, 2011, and a final order on November 14, 2011, denying the petition and amended petition for reformation of trust. Appellants timely appealed the written order.

### I. *Extrinsic Evidence of Motive, Intent, Plan, and Statements against Interest*

Appellants contend in their first point on appeal that the trial court erred by exclud-

---

1. The circuit court mistakenly found that Arvest "remained second successor trustee."

ing extrinsic evidence regarding Mary Jane's motive, intent, plan, and statements against her interest. They argue that the trial court erred by excluding certain evidence that "fully developed" Mary Jane's state of mind regarding her estate plan. They note the court's rulings that it would not hear about personal relationships, such as Lorinda Hackett and Lawanda Dourth's proffered testimony that Mary Jane was upset and afraid of appellee when she lived in the house; Rhoads's proffered testimony that Mary Jane was upset in 2008 because appellee was pushy, "grabby" about money, and too possessive of assets; and similar proffered testimony by appellants.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). Hearsay is generally inadmissible. Ark. R. Evid. 802. Pertinent to the present appeal is the exception to the rule against hearsay for a then-existing mental, emotional, or physical condition:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Ark. R. Evid. 803(3). Also pertinent to the present appeal is Rule 804(b)(3), which excepts from the hearsay rule a statement that was at the time of its making "so far contrary to the declarant's pecuniary or proprietary interest . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."

Rule 803(3) has been applied to admit, over a hearsay objection, an out-of-court statement by a testator/declarant concerning his intent to make a particular disposition of his property by will. *See Greenwood v. Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979). Under Rule 803(3), a declarant's statement that he or she intends to do something in the future is admissible to prove the truth of the matter asserted. *Primerica Life Ins. Co. v. Watson*, 362 Ark. 54, 207 S.W.3d 443 (2004).

In *Primerica*, the trial court declared a widow to be the beneficiary of her husband's life insurance policy. Our supreme court rejected the argument that the trial court erred in allowing certain hearsay statements concerning the husband's intent to change the beneficiary and his belief that he had done so. It found that his statement to his widow, "Well, I guess I need to change the beneficiary on my policy, since I'm going to keep you," which he made just before phoning his insurance agent and requesting the change, fell within the exception of Rule 803(3) because it reflected the insured's intention to make the change. A statement the insured made to his stepson that he was buying insurance and that the stepson's mother would be the beneficiary, as well as the widow's testimony about overhearing the insured tell his agent that he needed to change the beneficiary, were also found to fall within the exception. The *Primerica* court found no error in the admission of these statements.

In *Easterling v. Weedman*, 54 Ark.App. 22, 922 S.W.2d 735 (1996), the son of a decedent sued an insurance agent who had sold annuities to the decedent, alleging fraud by the agent. The jury returned verdicts upon written interrogatories that the deceased had intended his son to be the beneficiary and that the insurance agent had negligently failed to implement

that intent. We reversed and remanded, explaining in part that the agent's testimony about the decedent's statements to him that the decedent did not want his son to be beneficiary or payee as to the annuities was not hearsay and, therefore, was improperly excluded:

> The decedent was the owner of the annuities in question. He made the purported statements to [the agent] concerning his intentions that his son not benefit from the annuities, and that the annuities benefit his wife. The decedent's statement was against the interest of his estate because the estate would not benefit from the annuities upon the decedent's death based upon his decision to name his wife as the beneficiary. As personal representative of the decedent's estate and as the decedent's heir at law, appellee [the son] was a party against whose interest the decedent's statements were directed.

*Id.* at 35, 922 S.W.2d at 741.

Here, in numerous instances, the trial court allowed testimony about Mary Jane's expression of intent to change her estate plans. Brust testified:

> Mary Jane had indicated to me that she intended to change her estate plan. That [appellants] were to receive her estate.... That was her intent at the time she first started talking to me about it. She later told me she had made those changes. She said she went to the lawyers and had things changed in her will. She changed things over and wanted everything to go to [appellants] and [appellee] was not to receive anything. She told me this had been accomplished.

Brust also testified about accompanying Mary Jane to Rhoads's office in September 2010, when Mary Jane obtained a copy of her will, read it in her car, and was "very unhappy" because appellee's name was on it. Brust testified, "Mary Jane said we're going back in the office, because she wanted [appellee's] name off of the will, and so we went back in. Mary Jane said that she wanted things changed." Finally, Brust testified that when they waited with Rhoads's assistant and learned that appellee had requested a copy of the will, Mary Jane reacted with anger and talked about greed. When Rhoads came into the room, Mary Jane was clear that "she wanted [appellee's] name off everything, and [appellee] was not to receive anything.... Mary Jane was talking to George in the room.... She wanted everything to go to [appellants]. She made that very clear." Brust said that in a meeting that lasted about fifteen minutes, Rhoads made notes, he left and made copies and came back, and Mary Jane signed the will he had just changed.

Lawanda Dourth, who did repairs and landscaping for Mary Jane, testified that Mary Jane "was just going to go to the attorney and have [her estate plan] changed. She just said she was going to have everything put in [appellants'] name." Appellant Laura testified that Mary Jane told her that she (Laura) was to inherit the entire estate, and appellant Carl testified that Mary Jane said she would leave everything to appellants and that appellee would not get any of the assets. According to Tanya Misenhimer, Mary Jane's hairdresser, Mary Jane said that she intended to go to an attorney "to make everything to where [appellee] would not have anything" and to have everything go to appellants. David Gotsche, who also worked in the beauty salon, testified that Mary Jane stated that she was going to her attorney in order to take appellee off the documents, that she wanted appellee to have "not one damn cent," and that the estate was being left to Mary Jane's niece and nephew.

On appeal, appellants do not dispute that under Rule 803(3), the trial court properly allowed testimony from the foregoing witnesses because it went to Mary Jane's intent to take action about changing her estate plan and executing the documents to do so. Conversely, we find no abuse of discretion in the trial court's decision to exclude testimony regarding certain aspects of Mary Jane's emotions and relationship that were not affirmative statements of intent. *See, e.g., Primerica, supra* (noting that statements of a declarant's belief are not admissible under Rule 803(3), unless they relate to the execution, revocation, identification, or terms of the declarant's will).

We agree with appellee that the present case is unlike *Easterling v. Weedman, supra*, where the hearsay exception of Rule 804(b)(3) included specific statements against the interest of the declarant's estate; he had died intestate and his estate would not benefit from the annuities upon his death if the beneficiary were changed. Statements in the present case regarding who should or would benefit from the trust had no bearing on whether or not the estate itself would benefit from the trust corpus, and thus they were not against the interest of the declarant's estate. Appellee—the residual beneficiary of the trust—is not the estate's personal representative; furthermore, Mary Jane did not die intestate and heirs at law are not entitled to her estate. Appellee thus cannot step into the shoes of Mary Jane and be bound by Mary Jane's statements as statements against the interest of the declarant's estate.

Trial courts are accorded wide discretion in evidentiary rulings, which will not be reversed on appeal absent a manifest abuse of that discretion. *Primerica Life Ins. Co. v. Watson,* 362 Ark. 54, 207 S.W.3d 443 (2004). We also note that an evidentiary error is harmless if the same or similar evidence is otherwise introduced at the trial. *Shamlin v. Shuffield,* 302 Ark. 164, 167, 787 S.W.2d 687, 689 (1990). In accord with *Easterling, supra,* and *Primerica, supra,* we find no abuse of discretion in the trial court's decisions to exclude testimony regarding aspects of Mary Jane's emotions and relationships that were not affirmative statements of intent.

## II. *Evidence to Reform the Trust*

As their second point on appeal, appellants contend that the trial court erred by failing to find clear and convincing evidence sufficient to reform the trust. The burden of proof in reformation cases is by clear and convincing evidence; the standard of review on appeal is whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Akin v. First Nat'l Bank,* 25 Ark.App. 341, 758 S.W.2d 14 (1988); Ark. R. Civ. P. 52(a) (2012). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Farm Credit Midsouth, PCA v. Reece Contracting, Inc.,* 359 Ark. 267, 196 S.W.3d 488 (2004). Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.*

Here, the trial court found that Mary Jane was a competent woman who was clear in her intentions; she was aware of time, place, and events, and able to manage her business affairs; she had much experience in managing her estate planning—having amended her plan on several occasions; and the last amendment to her trust simply brought it into conformity with other previously amended documents. The court noted that the witnesses who testified about Mary Jane's mental condi-

tion up to the time of her death—Brust, Dourth, Hackett, Misenhimer, Gotsche, appellant Carl, and appellant Laura—knew her well and testified that she was intelligent, clear in language, specific, and direct.

Furthermore, Mary Jane's physician of thirty years testified that she was competent and had no medical reason rendering her unable to clearly express her testamentary intentions and wishes to her attorney. Dr. Gary Neville testified that although Mary Jane had some problems with her eyesight, she was able to read prescriptions and still drove in 2008. He said that he noted a "fretful depression that many elderly women have, hand wringing, upset about life, the fact that her son had died, her husband had died." He had noted this fretful depression as far back as 1997; on April 1, 2010, he again noted some mild depression—but not severe; and he never thought her to be clinically depressed or more depressed due to appellee's presence in the home. The only medical note regarding confusion was that it was brief, was attributed to a cardiac medicine, and stopped when the medication was corrected in August 2008.

Rhoads testified that he had no concerns about Mary Jane's competency when he saw her in 2006, 2007, 2008, and 2010. She was "organized in her thoughts and precise in her speech" in 2007 when she discussed the second amendment and in 2008 when she removed appellee from all positions of control. He testified that when creating the second amendment, she was precise enough to make him understand that appellant Laura was to receive a $50,000 distribution, indicating her apparent knowledge that she needed to tell him if appellant Laura was to receive anything. He testified that Mary Jane was again clear and specific in creating the third amendment in 2008, expressing her intent as "I don't want [appellee] handling my affairs," and not mentioning who was to be beneficiary of her estate. He testified that she remained "organized in her thoughts and precise in her speech" in 2010 even though "she was older by that time and she was more feeble and she was a little hyper, but I still took her as being organized in what she was telling me." He said she was concerned beyond what he thought was necessary over who the executor was, but he viewed that as a minor issue that had been overlooked in 2008; he remembered explaining to her that the executor was not a very important office but that she could certainly change it. He testified that he might have misunderstood her intentions at the last meeting.

Attorney William Jackson Butt II testified as an expert in the area of estate planning. He said that he saw evidence of Mary Jane's intent not being properly expressed in the estate-planning documents. He found a high likelihood of miscommunication between Mary Jane and her attorney in 2008 and 2010, when Rhoads did not follow his previous good practice of keeping file notes, preparing documents and transmitting them to his client with a letter of explanation, and following up with discussion after giving her time with the documents before she came in to execute them. He agreed, however, that a lawyer did not always have to follow this exact process to assure that a client understood the content and meaning of estate-planning documents.

On appeal, appellants argue that Mary Jane did not understand the words executor, beneficiary, and trustee, and did not understand what she was doing when she made appellant Laura the executrix of her last will and testament rather that the beneficiary of the estate. We agree with appellee that this argument makes no sense, for it would follow that appellant Carl would succeed his wife as successive

beneficiary and that Arvest would be successive beneficiary in his absence. The trial court specifically rejected appellants' argument, finding that Mary Jane clearly did understand the difference between the terms at issue, evidenced "by the fact that she had made changes to both executors/executrixes, trustees, and beneficiary" on documents.

The court concluded that appellants did not meet the high burden of proof required to remove appellee as residual beneficiary to the trust or to prove that a mistake was made in the drafting of the estate-planning documents. We hold that the circuit court's findings are not clearly erroneous, and we accordingly affirm the denial of appellants' petition for reformation.

Affirmed.

GLADWIN and GLOVER, JJ., agree.