DENNIS *v.* EQUITABLE LIFE ASSURANCE SOCIETY.

and

DENNIS *v.* STANDARD OIL COMPANY OF LOUISIANA.

4-4054

Opinion delivered November 25, 1935.

*A. L. Rotenberry,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough* and *Moore, Gray, Burrow & Chowning,* for appellees.

*D. K. Hawthorne,* for cross-appellant.

BAKER, J.   On November 18, 1934, Ernest E. Dennis died in Little Rock from a self-inflicted gunshot wound. He left surviving him Pearl Dennis, his widow, the appellant in both of the cases on appeal here, and eight children by a former marriage.   The children are all minors.   The suits for their interests are prosecuted by their respective guardians.   The subject-matter in the suit against the Equitable Life Assurance Society was the amount alleged by the plaintiff to be owing to her by reason of a group insurance contract made by the insurance company insuring employees of the Standard Oil Company of New Jersey and its subsidiaries, including Standard Oil Company of Louisiana.   The second suit grew out of a contract, whereby the Standard Oil Company of New Jersey provided for certain benefits to be paid upon the death of employees to surviving

beneficiaries. The litigation in both of these cases does not arise out of any denial of liability on the part of the insurance company, or of the Standard Oil Company of Louisiana, of which company the said Ernest E. Dennis was an employee at the time of his death. Premiums were paid to the insurance organization by an authorized deduction from the salary of the employee. The Standard Oil Company of New Jersey and its subsidiaries, including Standard Oil Company of Louisiana, sued here, made no charge against its employees for such benefits as might accrue upon the death of the employees who had been employed for a sufficient length of time to be entitled to these benefits. No deductions were made from salaries or wages, though the amount of the benefits was determined by the length of time the employees had been in the service of the Standard Oil Company.

At the time Ernest E. Dennis agreed to accept the benefits of the group policy of insurance, he was a widower, and the same statement may be made in regard to the other fund created by his employer. Mr. Dennis' application for insurance in the group policy was in the following form:

"S. O. Form G. 214
"Group Life Insurance Plan
"Acceptance of Preference Beneficiary Schedule
"To Standard Oil Co. of La.
"(Name of employing Company)
"Name of Employee Ernest E. Dennis Ck. or P. R. No. 775
"Marital Status—Widower
"(Married, single, widowed, divorced)
"No. of children living—8
"No. of natural parents living. Father.

"I hereby agree that in the event of my death while insured under the 'Group Life Insurance Plan' of the Standard Oil Company (N. J.), the insurance shall be payable to the person or persons in the first of the following classes of preference beneficiaries of which a member or members shall survive me:

"(a)  Widow or widower
"(b)  Children
"(c)  Parents
"(d)  Brothers and sisters
"(e)  Executors or administrators.

"I reserve the right to change this beneficiary agreement.

"Date December 11, 1931.

"Witness W. M. Rogers.

"Ernest E. Dennis, signature of employee."

The principal issue to be determined arises out of the acceptance of this preference beneficiary schedule. It is apparent that the beneficiary must be determined as of the date of the death of the insured, when the rights of the proper beneficiary would become fixed or vested, but prior to that time no particular individual or designated beneficiary had any vested right or interest in the policy. The order of preference of the beneficiary is set out in the schedule, the benefits being payable first to the widow or widower, or, that beneficiary failing, to the children of the insured; that class failing, then the parents of the insured. It is apparent that beneficiaries could not be determined by the insurance organization by a mere examination of the policy of insurance, but recourse must be had to extraneous proof for a determination of the preferred beneficiary in the class surviving the insured. The children of Ernest E. Dennis, through their proper guardians, were insisting that, since their father was not married at the time this policy was issued, they were the first of the preference beneficiaries then in being; that the contract was made for their benefit, and that, without some affirmative act on the part of the insured, their father, they continued as preferred beneficiaries, that he had the right to change beneficiary, but not having done so, the proceeds of the insurance policy were payable to them.

Mrs. Dennis made proof of death, insisting upon payment of the policy to her and upon the insurance company's delay in paying over the money filed suit in the circuit court of Pulaski County, Arkansas, to recover the proceeds of the insurance policy, for the 12 per cent.

penalty and for attorney's fee. The appellee insurance company then filed its answer, wherein it admitted the liability for the amount of the insurance, but stated that the children of Ernest E. Dennis, through their respective guardians, were asserting claims to the proceeds of the insurance policy, and asked that its answer be treated as an interpleader, for a transfer to the chancery court, and offered to pay the money into the registry of the court, and also asked that it be discharged.

Substantially the same procedure was had as to the fund in controversy for which the Standard Oil Company of Louisiana was sued, and that company in like manner interpleaded and paid into the registry of the court the amount of money there involved, a small indebtedness owing by Dennis to the company having been deducted from the amount sued for.

The difference in the two cases arises out of a slight difference in the designation of preference beneficiaries. That difference will be shown later in this opinion.

The chancery court, upon a final hearing of the case, discharged the insurance company without requiring it to pay the 12 per cent. penalty or attorney's fee, but required it to pay interest from the date proof of death was filed until the fund was deposited. Mrs. Dennis, appellant, has appealed from the action of the court in refusing to charge the penalty and attorney's fee in her favor against the insurance company, and the insurance company has cross-appealed on account of the charge of interest, and the minor children of the insured have prayed a cross-appeal, alleging that the court erred in awarding the fund to Mrs. Dennis, their step-mother.

The first matter with which we deal is a determination of the proper beneficiary under this insurance policy. As intimated above, the vague, uncertain, and indefinite designation of a beneficiary makes it necessary to determine or decide certain facts and then to declare the law in relation thereto.

Mrs. Pearl Dennis and Ernest E. Dennis were married shortly after this insurance policy was issued. Mrs. Dennis says that they discussed as between themselves, prior to her marriage, the fact that he had applied for

this insurance, and that upon their marriage it would be for her benefit in the event of his death. It is not necessary that we decide the case upon this kind of claim or presentation, as all of the matters here in controversy may be put upon a more substantial footing for a determination of the facts necessary to a decision and the declaration of law in relation thereto.

The answer of the guardians alleged that the second marriage of Mr. and Mrs. Dennis, which occurred on October 14, 1934, was illegal because the license therefor was issued upon Sunday. This question of legality, however, has not been briefed and, we assume, has been abandoned. From the evidence, it may be said that Dennis and his wife had been married a little more than a year prior to his death, although they were divorced in July, 1934, and were again married on October 14, 1934, and lived together after the second marriage continuously until Dennis' death.

After the insurance policy was issued, had Dennis then died prior to their marriage, the proceeds of the policy would have been payable to his children. Upon their marriage, however, a preferred class was created. The wife, upon his death, would have been the widow mentioned in the policy. Upon the divorce that class was no longer preferred, and, had he died prior to October 14, 1934, the date of his second marriage to appellant, the children would have stood then as the preference beneficiaries. Upon the second marriage, however, the status was again changed, and the class of surviving spouse came into being and continued until the death of the insured.

Some proof is offered to the effect that, after Dennis was taken to the hospital, on the day he was shot, that he advised Dr. Bennett and Mr. Broadaway that the insurance money should be paid to his children. These matters are argued here.

It is unnecessary to decide or determine the competency or relevance of this testimony. It was within the power and control of the insured to determine and fix definitely, under his policy, the beneficiary, instead of leaving the uncertain and vague condition to continue

under the preference beneficiary agreement. Certainly announcement of desires or preferences cannot determine beneficiaries. That matter has been decided by this court on several occasions. *Lincoln Reserve Life Ins. Co.* v. *Smith,* 134 Ark. 245, 203 S. W. 698; *Brotherhood Railroad Trainmen* v. *Meredith,* 146 Ark. 140, 225 S. W. 337.

The policy seems to contravene no well-settled principle of law, and must be enforced according to its terms and conditions. *Standard Life & Accident Insurance Company* v. *Ward,* 65 Ark. 295, 45 S. W. 1065; *Maryland Casualty Company* v. *Chew,* 92 Ark. 276, 122 S. W. 642.

A case, however, perhaps more nearly in point is that of *Runyan* v. *Runyan,* 101 Ark. 353, 142 S. W. 519. In this case the policy of insurance was payable to the widow and heirs, or such beneficiary as he might designate on the reverse side of the policy. Since none was designated, it was held to be payable to the widow. The expression of an opinion, by officers of the insurer, or desire on the part of the insured will not operate to modify or change the policy in any respect. *Gibson* v. *Moore,* 187 Ark. 897, 63 S. W. (2d) 344.

We take the following announcement from vol. 2, Couch's Cyclopedia of Insurance Law, page 997, § 336:

"The marriage of a member of a mutual benefit association will, however, render a former designation of a beneficiary inoperative, where the one named as beneficiary would not be eligible to be named after the member's marriage, and, upon the member's death without an express change of beneficiary, the benefit will go to his wife, or those of the classes entitled to be named, in the order specified."

The text indicates that several jurisdictions support this theory. None seems opposed to it.

In the case of *Davin* v. *Davin,* 99 N. Y. Supplement 1012, we find that it is a contest for the proceeds of an insurance certificate. James J. Davin was insured in the Knights of Columbus. His certificate had been made payable to his father, and the designated beneficiary had not been changed in the certificate of insurance at the time of the death of the insured, but the insured had

married after taking out the insurance and left a widow at the time of his death. This certificate of insurance was payable to a preference beneficiary in the following order, to-wit: ''(a) To such person or persons of the immediate family of said member as by him designated. (b) To such person or persons, in default of such family, of the blood relatives of such member as by him designated. (c) In default of any designation by said member, or out of the order named, except by permission of the board of directors or their successors, for cause shown, then such aid shall be rendered by said corporation to such family or relatives who are heirs at law of such member, in the manner above arranged, upon their proof of being such family or such heirs at law.'' At the time the certificate was issued the father was of the immediate family, and as such was designated as the beneficiary. Under paragraph (a), above set out, it was determined that upon the marriage of James J. Davin, he ceased to reside with his father and maintained a separate residence with his wife, and so lived apart from his father until his death. In other words, he and his wife constituted a new family, and she became a member of that immediate family to whom the proceeds of the insurance was payable.

Another class beneficiary was determined according to the same principles in the case of *Lister* v. *Lister,* 73 Mo. App. 99. Practically the same conditions prevailed, and the same ruling was made in the case of *Knights of Columbus* v. *McInerney,* 153 Mich. 574, 117 N. W. 166, 126 Am. St. Rep. 541.

To the same effect see *Larkin* v. *Knights of Columbus,* 188 Mass. 22, 73 N. E. 850, and the case of *Knights of Columbus* v. *Rowe,* 70 Conn. 545, 40 Atl. 451.

It must appear from the foregoing that by the weight of authority the wife is favored as the preferred beneficiary under the above preferred beneficiary provision.

Therefore there was no error in the decree of the court awarding to her the amount of insurance provided under the group policy and paid into court by the Equitable Life Assurance Society.

From the foregoing discussion, it is seen that the question of a proper beneficiary was a real one. It was a matter that the parties to this controversy could not determine or settle among themselves.

The cross-appellants, minor children of Ernest E. Dennis, by their guardians, were asserting their claim in good faith, and prior to the filing of the suit were insisting that the money should be paid over to them to the exclusion of the widow. The appellant insurance company could not, without involving itself in serious danger, assume the responsibility of deciding disputed facts and controverted propositions of law. We hardly think any responsible attorney would have assumed to advise the insurance company to make such settlement, when at a comparatively small expense it could interplead the parties, pay the fund into court, where the controversy could be settled at the expense of the contesting parties, even after the insurance company was discharged. The interpleader was a proper proceeding, though we think the appellant is somewhat warranted in a complaint on account of the unnecessary delay on the part of the insurance company before interpleading and paying over the fund.

The only expense of the insurance company was the employment of its attorney. It waited until it was sued, but this expense even then had to be incurred. Since it had nothing to lose, it should have, within a reasonable time, after the dispute arose, have filed the interpleader and paid the fund over. On account of its failure to do so, the chancellor required the insurance company to pay interest on the fund. We cannot say that this was improper.

Since the insurance company, however, made no dispute as to its liability for the fund, and was not attempting in any respect to defeat a recovery thereof, it was not error to refuse to impose the penalty or to charge attorney's fee against it. As between the appellee insurance company and other appellees, or the appellant, there was nothing to litigate. Hence, appellant's complaint that she was entitled to a jury trial is without merit. See "Interpleader," 15 R. C. L. 220, 237, § 19.

The decree rendered therefore in the proceeding of *Appellant* v. *Equitable Life Assurance Society* is affirmed on appeal and cross-appeal.

The basis of the controversy in the proceeding of *Dennis* v. *Standard Oil Company of La.*, arises in like manner out of the designation of preference beneficiaries.

"Under this subdivision (b) payment of the Death Benefit shall not be made as outlined in subdivision (a), but the total Death Benefit shall be payable to the first of the following classes of preference beneficiaries of which a member or members shall qualify at the death of the employee, omitting, however, any person or persons who shall have been previously excluded at the request of the employee, and with the written approval of the company.

1. Widow or widower if living with or dependent upon the decedent at the time of his death to the extent of at least 20 per cent. of his pay.

2. Surviving children, regardless of dependency, and each stepchild if living with or dependent upon decedent at the time of his death to the extent of at least 20 per cent. of his pay, in equal shares."

It was decreed by the trial court that Mrs. Dennis, the appellant here, was not living with her husband at the time of his death, and that he was not contributing to her 20 per cent. of his salary, and that she was therefore ineligible as beneficiary under the foregoing preference beneficiary designation.

From the foregoing authorities above cited and set out, it must be said that, if she as widow could otherwise qualify, this fund payable by the Standard Oil Company of Louisiana should have been paid to her.

However, we are impelled to agree in one particular, at least, with the announcement of the trial court, to the effect that the proof does not establish the fact that her husband was contributing at least 20 per cent. of his wages to her. It is true the proof may show that she was dependent upon him.

The proof shows that he was paying rentals upon apartments at Helena, while they lived there and later at Little Rock, where they lived at the time he died and

just prior thereto, but these payments were not contributions solely for the benefit of his wife. He was also receiving a part of the benefits of such payments. It also appears from her testimony that he had impaired his credit to the extent that he could not borrow money; that she was borrowing for him. It was argued that while he was in the hospital he contributed $81 or gave his wife that amount. We do not so regard the testimony as tending to prove that alleged fact. The appellant testified that he commanded her to "get my money." Only a short time before, perhaps an hour or so, he had made a sole voluntary contribution of $5. He had given her $5 while she was in the beauty shop. If he were intending to give her the full $86, the opportunity to do so was then present. Appellant argues that the fact, if it be such, the insured did not want her present in the room after he was taken to the hospital, is not such an abandonment or proof that they were not living together, as would preclude the appellant from continuing in the status of a preferred beneficiary. We agree with that proposition. The conditions that prevailed at that time, perhaps did not warrant an announcement that the parties separated during the period intervening between the time the insured shot himself until his death, about twenty-four hours. By the same token it cannot be said that at the time when he was expecting death momentarily, when he knew that whatever money he possessed was in the pocket of the clothes he had worn to the hospital, and when he was, perhaps, disturbed about the prospect of its loss and advised his wife to "get my money," the fact that she got from his pockets the $81 would not be treated as a contribution or donation to her. The chancellor decided that she did not qualify under the preference beneficiary provision for the reason that the evidence does not show that he had contributed to her to the extent of 20 per cent. of his earnings. The burden was upon appellant to establish such facts as would entitle her to recover. The decision was not against the preponderance of the testimony.

Since the next in the preference beneficiary schedule are the children, and the decree gave this fund paid into

court by the Standard Oil Company of Louisiana to the children, upon their cross-complaint. The decree was correct.

In that respect, the decree of the chancery court is also affirmed.