# NATIONWIDE MUTUAL INSURANCE COMPANY *v.* Roxanne CUMBIE

CA 05-353                                           215 S.W.3d 694

Court of Appeals of Arkansas
Opinion delivered October 12, 2005

*Laser Law Firm*, by: *Kevin Staten* and *Brian A. Brown*, for appellant.

*Lovell & Nalley*, by: *John Doyle Nalley*, for appellee.

JOHN MAUZY PITTMAN, Chief Judge. The appellee, Roxanne Cumbie, was injured in a motor vehicle accident on December 30, 2001. She was not at fault. She settled with the tortfeasor's insurance carrier for his policy limits of $25,000 and then made demand upon appellant Nationwide for the policy limits under her own underinsured motorist policy. Nationwide evaluated the claim and offered to settle the underinsured motorist claim for $10,000. Appellee rejected this offer and filed suit on October 28, 2002, seeking the policy limits of $50,000 plus a statutory twelve percent penalty, prejudgment interest, and attorney's fees. Shortly before the scheduled trial date, Nationwide agreed to tender its policy limits and allow the court to determine its liability for the penalty, prejudgment interest, and attorney's fees. The court found Nationwide liable for all of these, and this appeal followed.

Nationwide first argues that the trial court erred in awarding the statutory twelve percent penalty because a "material change of circumstances" occurred after the lawsuit was filed in that appellee

required additional surgery and incurred substantial additional medical bills. Arkansas Code Annotated § 23-79-208(a)(1) (Repl. 2004) provides that:

> In all cases in which loss occurs and the cargo, property, marine, casualty, fidelity, surety, cyclone, tornado, life, accident and health, medical, hospital, or surgical benefit insurance company and fraternal benefit society or farmers' mutual aid association or company liable therefor shall fail to pay the losses within the time specified in the policy after demand is made, the person, firm, corporation, or association shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.

The allowance of the statutory penalty and attorney's fees when an insurer, after demand, fails to pay for an insured loss within the time specified in the policy is punitive in nature and is directed against the unwarranted delaying tactics of insurers. *Shepherd v. State Auto Property & Casualty Insurance Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993). With regard to the reference in § 23-79-208(a) to an insurance company's failure to pay losses "within the time specified in the policy," where an agreement does not specify a time period in which action is to be taken, the losses must be paid within a reasonable time. *McHalffey v. Nationwide Mutual Insurance Co.*, 76 Ark. App. 235, 61 S.W.3d 231 (2001).

Attorney's fees and penalty attach if the insured is required to file suit, even though judgment is confessed before trial. *Silvey Cos. v. Riley*, 318 Ark. 788, 888 S.W.2d 636 (1994). The appellant in *Silvey Cos. v. Riley* argued that there was an exception to the above-stated rule when it was reasonably necessary for the insurance company to continue to investigate the loss even after payment is due under terms of the policy. This argument was based on *Clark v. New York Life Insurance Co.*, 245 Ark. 763, 434 S.W.2d 611 (1968), where the supreme court held that the statutory language regarding an insurer's failure to pay losses within the time specified in the policy contemplates that the insurer shall have a reasonable time to make necessary investigation in reference to the loss and the circumstances thereof after demand. Although the *Silvey Cos.* court did not decide the issue because the appellant in that case failed to show a reasonable need for further investigation, and although the holding in *Clark* was based on the slightly different language of the predecessor to the present twelve percent

penalty statute, Ark. Stat. Ann. § 66-3238 (Repl. 1966), we think that the language and purpose of the two penalty statutes are so nearly identical that Ark. Code Ann. § 23-79-208(a)(1) likewise contemplates that the insurer shall have a reasonable time to make necessary investigation in reference to the loss and the circumstances thereof after demand.

The question, then, is whether the trial court could reasonably have found that Nationwide had a reasonable opportunity to investigate the loss. We think that it clearly could. The record shows that Nationwide refused to fully examine the medical records made available to it by appellee's authorization because it did not want to go to the expense of paying for copies, insisting instead that appellee provide it with all relevant documents. However, the statute requiring insurers to offer underinsured motorist coverage to their insureds clearly contemplates that the insurer will make an independent investigation of an underinsured motorist claim based on authorizations and releases provided by the insured.[1]

■ Nor do we agree with Nationwide's argument that it had no reason to know the value of the claim until appellee actually underwent surgery and incurred the additional medical expenses. The purpose of underinsured motorist coverage in this state is to supplement benefits recovered from a tortfeasor's liability carrier so to provide compensation to the extent of the injury, subject to the policy limit. *Shepherd v. State Auto Property & Casualty Insurance Co., supra.* As an underinsured motorist carrier, Nationwide's contractual duty, subject to its policy limit, was based on the liability of the tortfeasor to its insured under Arkansas law, and

---

[1] Ark. Code Ann. § 23-89-209(c) provides, in part:

If a tentative agreement to settle for the liability limits of the owner or operator of the other vehicle has been reached between the insured and the owner or operator, written notice may be given by the insured injured party to his or her underinsured motorist coverage insurer by certified mail, return receipt requested. The written notice shall include:

(1) Written documentation of pecuniary losses incurred, including copies of all medical bills;

(2) Written authorization or a court order authorizing the underinsured motorist insurer to obtain medical reports from all employers and medical providers; and

(3) Written confirmation from the tortfeasor's liability insurer as to the amount of the alleged tortfeasor's liability limits and the terms of the tentative settlement....

probable future medical expenses have been a recognized element of damages in negligence actions for many decades. *See, e.g., Arkansas Power & Light Co. v. Heyligers,* 188 Ark. 815, 67 S.W.2d 1021 (1934). Furthermore, Nationwide's good faith in its investigation and evaluation of the extent of appellee's claim was called into question by unrefuted evidence that, even after learning of appellee's additional surgery and medical expenses, Nationwide did not tender its policy limits but instead continued to negotiate a settlement for a lesser amount. A trial court's decision on whether to award attorney's fees, a twelve-percent penalty, and interest due to an insurer's failure to timely pay benefits will not be reversed on appeal unless the trial court's decision is clearly erroneous. *American Underwriters Insurance Co. v. Turner,* 57 Ark. App. 169, 944 S.W.2d 129 (1997). On this record, we cannot say that the trial court could not reasonably have found that Nationwide could have determined, within a reasonable time after appellee's demand under her underinsured motorist policy, that appellee would likely require further medical treatment sufficient to warrant payment of the policy limits.

■ Nationwide next argues that the award of prejudgment interest was inappropriate. The general test for awarding prejudgment interest is whether a method exists for fixing an exact value on the cause of action at the time of the occurrence of the event which gives rise to the cause of action. If such a method exists, prejudgment interest should be allowed. *Home Mutual Fire Insurance Co. v. Jones,* 63 Ark. App. 221, 977 S.W.2d 12 (1998). We hold that the twelve percent penalty award was warranted. Here, Nationwide's potential liability was limited by the policy limit of $50,000 so that, in the context of this case, the question regarding the appropriateness of prejudgment interest is whether Nationwide should have known at the time demand was made that it was liable for its policy limits. *See Shepherd v. State Auto Property & Casualty Insurance Co., supra.* Given our holding that the trial court could reasonably have found that Nationwide should have known that it was liable for the policy limits within a reasonable time after demand for payment was made on May 29, 2002, we cannot say that the trial court clearly erred in awarding prejudgment interest for a period beginning in June 2004.

Affirmed.

BIRD and NEAL, JJ., agree.