2011 Ark. App. 710

**FARM BUREAU MUTUAL INSURANCE CO. OF ARKANSAS, INC., Appellant**

v.

**Jim GUYER and Lisa Guyer, Appellees.**

No. CA 11–274.

Court of Appeals of Arkansas.

Nov. 16, 2011.

---

Thomas Benton Smith, Jr., Jonesboro, for appellant.

Richard F. Rhodes, Jr., Osceola, for appellee.

DOUG MARTIN, Judge.

Appellant Farm Bureau Mutual Insurance Co. ("Farm Bureau") appeals from an order of the Mississippi County Circuit Court granting the majority of the summary-judgment motion filed by appellees Jim and Lisa Guyer and denying the majority of Farm Bureau's cross-motion for summary judgment. The Guyers have cross-appealed from that portion of the circuit court's order granting Farm Bureau's summary-judgment motion on the Guyers' tort claim for bad faith. We find no error and affirm on both direct appeal and cross-appeal.

The Guyers purchased an insurance policy from Farm Bureau; the policy insured the Guyers' home for $200,000 and their personal property for $100,000. The homeowner policy declaration listed Bank of America as a mortgagee on the property and as a loss payee.

On March 24, 2010, the Guyers' home and personal property were destroyed by fire. The Guyers met with their insurance adjuster, Matt Cossey, on March 29, 2010, and executed a sworn statement and proof-of-loss form. An inspector examined the property on April 3, 2010, to determine whether the fire was suspicious in nature. Even after the inspector determined that the fire was not suspicious, however, Farm Bureau refused to pay the Guyers their policy proceeds, informing the Guyers that it now needed to perform a search for any liens on the property. When Farm Bureau still had not paid on the policy by May 3, 2010, Jim Guyer again contacted Cossey, who stated that Farm Bureau had not discovered any liens on the property but was now having a title opinion prepared. On that basis, Farm Bureau again refused to pay on the policy.

On May 19, 2010, Farm Bureau filed a complaint in interpleader in Mississippi County Circuit Court, naming the Guyers, Bank of America, Regions Bank, MBNA America Bank, and Capital One Bank as defendants.[1] In its complaint, Farm Bureau alleged that, in addition to Bank of America's mortgage in the amount of approximately $137,250, it had discovered that Regions Bank also had a $40,000 mortgage on the property; that MBNA America Bank had a judgment against Lisa Guyer in the amount of $42,079.41; and that Capital One Bank had a default judgment against the Guyers for $33,257.56. Given the "potential for conflicting claims as to the insurance proceeds," Farm Bureau claimed it was "in doubt as to which of the defendants is entitled to be paid from the homeowner insurance proceeds." Accordingly, Farm Bureau asserted that it was in "the best interest of all defendants" for it to tender $300,000—representing its homeowner policy limits of $200,000 for the dwelling and $100,000 for personal property—into the registry of the court "pending an order from this court as to how these proceeds should be distributed."

The Guyers filed an answer and counterclaim, and later an amended answer and counterclaim, in which they asserted that Farm Bureau was obligated by the insurance policy to pay the amount of insurance on the Guyers' dwelling to the Guyers and to Bank of America, and not to any of the other named defendants in the complaint in interpleader. The Guyers asserted that the complaint in interpleader was improper, unreasonable, and resulted in delay and needless expense. Their counterclaim

---

1. Of the banks named as defendants, only MBNA America Bank filed an answer in interpleader. MBNA America Bank withdrew its claim on December 6, 2010.

sought the statutory penalty and attorney's fees provided for in Arkansas Code Annotated section 23–79–208 (Repl.2006); in addition, the Guyers raised claims of breach of contract and bad faith.

■ Both Farm Bureau and the Guyers filed motions for summary judgment. The circuit court held a hearing on the various pleadings on November 18, 2010. At the conclusion of the hearing, the court found that Farm Bureau had no reasonable basis for filing its complaint in interpleader because, other than the Guyers and Bank of America, none of the named defendants (Regions Bank, MBNA America Bank, and Capital One Bank) had any claim against Farm Bureau at the time the interpleader action was filed.[2] In its order, entered on December 3, 2010, the court granted the Guyers' motion for summary judgment on the interpleader issue and awarded the Guyers the 12% penalty set out in section 23–79–208, as well as attorney's fees and prejudgment interest.[3] The court found, however, that Farm Bureau's actions had not amounted to bad faith and granted Farm Bureau's motion for summary judgment on that issue. Farm Bureau filed a timely notice of appeal on December 30, 2010, and the Guyers filed a timely notice of cross-appeal on January 6, 2011.

■ In its sole point on appeal, Farm Bureau contends that the trial court committed error by finding that Farm Bureau's interpleader action added unnecessary parties and awarding the statutory penalty, interest, and attorney's fees to the Guyers pursuant to section 23–79–208. A trial court's decision on whether to award attorney's fees, a 12% penalty, and interest due to an insurer's failure to timely pay benefits will not be reversed on appeal unless the trial court's decision is clearly erroneous. *S. Farm Bur. Cas. Ins. Co. v. Watkins,* 2011 Ark. App. 388, 386 S.W.3d 6; *Nationwide Mut. Ins. Co. v. Cumbie,* 92 Ark.App. 448, 215 S.W.3d 694 (2005).

The statute at issue provides, in pertinent part, as follows:

In all cases in which loss occurs and the ... property ... insurance company ... liable therefor shall fail to pay the losses within the time specified in the policy after demand is made, the person, firm, corporation, or association shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.

Ark.Code Ann. § 23–79–208(a)(1).

■ The allowance of the statutory penalty and attorney's fees when an insur-

2. Although not raised by either party, a question arose during this court's conference whether the circuit court's order was a final, appealable order. The supreme court has held, under Arkansas Rule of Civil Procedure 54(b), that an order is not final that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties. *See Schubert v. Target Stores, Inc.,* 2009 Ark. 89, 302 S.W.3d 33; *S. Farm Bur. Cas. Ins. Co. v. Easter,* 369 Ark. 101, 251 S.W.3d 251 (2007). Here, while the circuit court's order does not specifically dismiss the additional bank defendants, the order does explicitly find and declare "that Capital One Bank, MBNA America Bank, N.A., and Regions Bank, a/k/a Regions Financial Corp., did not and do not have any interest in the funds deposited in this interpleader action by the Plaintiff." We conclude that this language definitively adjudicates the rights of these parties, and accordingly, we have determined that there is a final, appealable order in this case.

3. The court's order directed the circuit clerk, with whom the money had been placed, to disburse $117,160.99 to the Guyers' attorney to be wired to Bank of America to pay off the mortgage; the remaining $182,839.01 under the policy was ordered disbursed to the Guyers and their attorney.

er, after demand, fails to pay for an insured loss within the time specified in the policy is punitive in nature and is directed against the unwarranted delaying tactics of insurers. *Shepherd v. State Auto Prop. & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993); *Nationwide Mut. Ins. Co. v. Cumbie, supra.* In the present case, the insurance contract does not specify a time in which the insurer must pay on a loss following a claim. Where an agreement does not specify a time period in which action is to be taken, the losses must be paid within a reasonable time. *Cumbie, supra; McHalffey v. Nationwide Mut. Life Ins. Co.*, 76 Ark.App. 235, 61 S.W.3d 231 (2001).

Here, the trial court found that Farm Bureau's filing of its interpleader complaint was unreasonable because none of the named defendants, other than the Guyers and Bank of America, had any claim to the proceeds of the insurance policy. Farm Bureau argues on appeal that the trial court erred because Farm Bureau had a right to protect itself from "competing interests" in the proceeds of the insurance policy. Among those competing interests, Farm Bureau contends, are Regions Bank's mortgage on the Guyers' property, MBNA America Bank's judgment against Lisa Guyer, and Capital One Bank's judgment against the Guyers. Farm Bureau suggests that these entities, as well as Bank of America, the mortgagee listed as loss payee in the insurance policy, "have or may have ... a right to the policy limits."

Farm Bureau relies on cases such as *Clark Center, Inc. v. National Life Insurance Co.*, 245 Ark. 563, 433 S.W.2d 151 (1968), and *Dennis v. Equitable Life Assurance Society*, 191 Ark. 825, 88 S.W.2d 76 (1935), in support of its argument that it was entitled to a reasonable amount of time to investigate the Guyers' claim and that the trial court's award of penalties,

interest, and attorney's fees was erroneous. In those cases, however, there were significant questions as to the identities of the beneficiaries of life-insurance policies. In *Clark Center*, for example, the decedent was insured by National Life and Accident Insurance Company under a policy that obligated the insurer, in the event of the insured's accidental death, to pay a sum to Clark Center, Inc., a corporation whose stockholders were the decedent's wife and children. When the corporation demanded payment, the insurer began an investigation and discovered that the insured's wife was being investigated for murdering her husband. The wife sued the insurance company before the "investigation was completed to [the insurer's] satisfaction, and the insurance company confessed liability on the policy and tendered the proceeds of the policy into the court's registry." *Clark Center*, 245 Ark. at 564, 433 S.W.2d at 152. The supreme court held that the trial court did not err in refusing to award the wife the statutory penalty and attorney's fees because the insurance company was making reasonable investigation into the claim, because if the wife (the beneficiary under the policy) had indeed killed her husband, the insured, she was not entitled to collect anything under the policy. *Id.* at 567, 433 S.W.2d at 153.

Similarly, in *Dennis, supra,* the insured was survived by his widow and children; prior to his death, Mr. Dennis enrolled in a group policy of insurance offered by his employer. The policy provided that, in the event of his death, the insurance would be payable to "the following classes of persons," including the insured's "widow" and "children." *Dennis,* 191 Ark. at 827–28, 88 S.W.2d at 77. The supreme court noted that it was "apparent" that the beneficiaries under the policy could not be determined by mere examination of the policy, "but recourse must be had to extraneous proof for a de-

termination of the preferred beneficiary in the class surviving the insured." *Id.* at 828, 88 S.W.2d at 77. The identity of the proper beneficiary was further confused because Mr. Dennis and his widow were married shortly after the insurance policy was issued, divorced, and then remarried shortly before Mr. Dennis's death. *Id.* at 829–30, 88 S.W.2d at 78.

Both Mr. Dennis's widow and his children filed claims under the policy, and the insurer, in light of the significant questions as to the identity of the proper beneficiary, admitted its liability under the policy but asked that its answer be treated as an interpleader and that it be allowed to pay the money into the registry of the court. *Id.* at 829, 88 S.W.2d at 78. The trial court determined that the widow was the proper beneficiary, but it denied the widow's demand for statutory penalties and attorney's fees. *Id.* The supreme court affirmed, holding that "the question of a proper beneficiary was a real one" and was a "matter that the parties to this controversy could not determine or settle among themselves." *Id.* at 833, 88 S.W.2d at 80. Accordingly, the court held that, because the claimants all asserted their claims in good faith, the insurance company "could not, without involving ↓₈itself in serious danger, assume the responsibility of deciding disputed facts and controverted propositions of law." *Id.* Accordingly, the court concluded that the interpleader action was proper. *Id.*[4]

More recently, in *Primerica Life Insurance Co. v. Watson,* 362 Ark. 54, 207 S.W.3d 443 (2004), the supreme court reversed an award of attorney's fees and penalties. There, a life-insurance policy was issued by Primerica Life Insurance

Company to Gary Watson, who, when he died, was survived by a widow named Ronda and an ex-wife named Mary Jane. *Primerica,* 362 Ark. at 56, 207 S.W.3d at 445. When Gary purchased the insurance, he named his then-wife, Mary Jane, as beneficiary. Gary and Mary Jane divorced in 1993, and Gary married Ronda in 1994. In 1996, Gary called Primerica and asked for a policy-change application so he could change the beneficiary on his policy. There was no specific beneficiary form, so when Gary returned the application, he wrote on it "change name of spouse." *Id.* at 57, 207 S.W.3d at 445.

After Gary passed away in 2003, Ronda attempted to assign the life-insurance policy to the funeral home to pay for Gary's funeral; however, a representative from Primerica contacted Ronda and told her she was not the named beneficiary, but Mary Jane was. After some investigation, Primerica again contacted Ronda and informed her that the company "was about to cut her a check when Mary Jane called and claimed that she was the ↓₉beneficiary." *Id.* at 57–58, 207 S.W.3d at 445. Ronda and Mary Jane were unable to reach an agreement, and Ronda subsequently filed suit against Primerica and Mary Jane, asking the court to declare her the rightful beneficiary. *Id.* at 58, 207 S.W.3d at 446. Primerica answered and interplead the funds of the policy into the registry of the court. A jury found that Ronda was the beneficiary, and after a later hearing, the circuit court found that Ronda was entitled to statutory penalties, interest, and attorney's fees. *Id.*

On appeal, Primerica argued that the trial court's decision was in error because

---

**4.** Although the circuit court in *Dennis* declined to award the statutory penalty and attorney's fees, it did order the insurance company to pay interest, a decision that was upheld by the supreme court because there was some "unnecessary delay on the part of the insurance company before interpleading and paying over the fund." *Id.* at 833, 88 S.W.2d at 80.

it did not engage in unwarranted delaying tactics and, in fact, had "stood ready, willing, and able to pay the proceeds of the policy" until confronted by competing and apparently legitimate claims from both Ronda, as the widow, and Mary Jane, as the named beneficiary in the policy. *Id.* at 62, 207 S.W.3d at 448. Primerica argued that, by interpleading the funds, it denied no one recovery but instead took the position that it wanted to pay, but could not determine the rightful payee. *Id.*, 207 S.W.3d at 449. The supreme court agreed, pointing out that while the policy-change application from Gary changed the name of his spouse to Ronda, it did not change the designation of the beneficiary from Mary Jane. *Id.* Thus, because it was necessary to have a court determine the rightful beneficiary, the supreme court concluded that Primerica's actions were not "tantamount to the kind of unwarranted delaying tactics envisioned by section 23–79–208." *Id.* at 63, 207 S.W.3d at 449–50.

■ The present case presents a much different scenario. The policy of insurance that Farm Bureau issued to the Guyers contained the following provisions concerning Farm Bureau's liability to pay in the event of a covered loss:

7. Our Payment of Loss

When we pay for a covered loss, we will adjust the loss with you and pay you, unless another payee is named in the policy or is legally entitled to be paid. Our payment of loss will be determined by:

    (a) an agreement between you and us; or

    (b) a court judgement [sic].

8. Mortgagees and Loss Payees
*Mortgage Clause*

This clause applies only to coverage on buildings and does not affect your rights or duties. If a mortgagee is shown on the Declaration page, we will pay any loss covered by this policy to the mortgagee and you as interests appear. If more than one mortgagee is shown for an insured location, the order of our payment to each mortgagee is the same as the order of the precedence of the mortgagees.

■■ It is undisputed that there was only one mortgagee—Bank of America—listed on the Homeowner Policy Declaration. Thus, under the plain terms of the insurance policy, the only mortgagee to whom Farm Bureau was liable was Bank of America. When a mortgagee's interest in property is protected by a standard mortgage clause, this court has noted that the parties have effected a pre-appropriation of the insurance proceeds and the proceeds cannot be used for another purpose without consent of both parties. *Ark. Teacher Retirement Sys. v. Coronado Props., Ltd.,* 33 Ark.App. 17, 20, 801 S.W.2d 50, 52 (1990) (citing *Sharp v. Pease,* 193 Ark. 352, 355, 99 S.W.2d 588, 590 (1936); *Bonham v. Johnson,* 98 Ark. 459, 461, 136 S.W. 191, 192 (1911)). Further, when a mortgagee is named as loss payee in its mortgagor's insurance policy, and a loss occurs, the mortgagee is entitled to enough of the proceeds to satisfy the mortgage indebtedness. *Id.* at 22, 801 S.W.2d at 54; *Echo, Inc. v. Stafford,* 21 Ark.App. 201, 205, 730 S.W.2d 913, 915 (1987). *See also Wilbanks v. Cobb,* 269 Ark. 936, 601 S.W.2d 601 (Ark.App.1980) (a loss-payee clause gives the payee thereunder a superior right in the proceeds to the extent of his interest, and the insured can only recover any balance in excess thereof).

That the Guyers had a second mortgage with Regions Bank is immaterial, insofar as the terms of the policy between the Guyers and Farm Bureau did not name Regions Bank as a loss payee. Indeed, Farm Bureau was entirely unaware of Regions Bank's mortgage on the property

until after Farm Bureau conducted its investigation and title search after the fire occurred. Accordingly, we conclude that the circuit court correctly determined that Farm Bureau's attempt to name Regions Bank as a defendant in interpleader was unnecessary.

■■■ Similarly, Farm Bureau's concerns about the other two judgment creditors—MBNA America Bank and Capital One Bank—were invalid. In *Echo, Inc. v. Stafford*, 21 Ark.App. 201, 730 S.W.2d 913 (1987), this court noted that a judgment lien is subject to all other existing liens that are valid as to the landowner, because the judgment lien does not attach to the land, but only to the judgment debtor's interest therein. *Id.* at 204, 730 S.W.2d at 915. Even if a judgment lienholder has a lien against the property, however, it does not follow that it has a lien against any insurance proceeds, because "[t]he amount collected on a fire insurance policy by an insured does not, in any sense, constitute proceeds of the property, and the coverage is personal to the insured and is for his benefit only." *Id.* Thus, neither MBNA America Bank nor Capital One Bank could have had any interest in the proceeds of the insurance policy, as their liens would not have applied to the insurance proceeds, and the circuit court properly ruled that Farm Bureau's interpleader action was improper as to these parties.

Further, even assuming that any of the other banks had opted to pursue their various interests, Farm Bureau would not have been subject to liability if it had simply paid the policy proceeds to Bank of America and the Guyers. Under Arkansas Code Annotated section 23–79–125(a) (Repl.2004), whenever the proceeds of an accident insurance policy become payable in accordance with the terms of the policy, and the insurer makes payment in accordance with the terms of the policy, the person designated in the policy is entitled to receive the proceeds. Subsection (b) of that statute then provides that

[t]he payments shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy or contract.

Ark.Code Ann. § 23–79–125(b).

None of the interpleader "bank defendants" gave written notice to Farm Bureau at any point in time that they intended to claim any interest in the policy proceeds.[5] Even assuming Farm Bureau's "fears" about other creditors coming after the insurance proceeds were valid, Farm Bureau could still have availed itself of the protection of this statute, rather than filing an interpleader action that did nothing but delay payment of the proceeds of the Guyers' policy. *See USAble Life v. Fow*, 307 Ark. 379, 820 S.W.2d 453 (1991).

In *Fow*, the supreme court affirmed the award of statutory penalties, attorney's fees, and interest where the insurance company, USAble Life, filed a complaint in interpleader when it determined that there were allegedly competing claims to the proceeds of a life insurance policy. The insured, Mr. Church, was insured under a group policy; in 1989, Mr. Church changed his beneficiaries from his wife, Mrs. Church, to his daughters, Thelma Fow and Judith Cole. Mr. Church died in July 1990, and Cole submitted a claim under the policy for herself and her sister. Mrs. Church, however, also contacted USAble

---

**5.** MBNA America Bank answered the interpleader complaint but later withdrew its pleadings.

Life and threatened to sue the company if it did not pay her. USAble filed a complaint in interpleader in October 1990 and sought to deposit the proceeds of the insurance policy into the registry of the court. *Fow*, 307 Ark. at 380, 820 S.W.2d at 454.

Fow and Cole, however, objected to the interpleader and counterclaimed for the statutory penalty and attorney's fee. The circuit court agreed with Fow and Cole and entered judgment against USAble Life, finding it liable to Fow and Cole for the policy proceeds, prejudgment interest, the 12% statutory penalty, and attorney's fees. The supreme court affirmed, noting that it was undisputed that USAble had in its files the change-of-beneficiary form naming Fow and Cole as beneficiaries of Mr. Church's policy. In addition, the court stated that USAble Life did not make any investigation as to the proper parties, but instead opted to interplead the policy proceeds based on Mrs. Church's verbal threat to sue the insurance company. *Id.* at 381–82, 820 S.W.2d at 455. Citing section 23–79–125, the court concluded that, absent any written notice of other claims, USAble Life's payment of the insurance proceeds to Fow and Cole would have fully discharged it from all claims under the policy. Because it opted to interplead the proceeds instead of paying on the policy, however, the supreme court held that it was appropriate that USAble Life should "bear the responsibility of the additional expenses visited on the beneficiaries." *Id.* at 383, 820 S.W.2d at 455.

In the present case, Farm Bureau claimed it was conducting an investigation into any other potential mortgage holders or judgment creditors in order to avoid being faced with multiple claims on the policy. At the hearing before the circuit court, however, Farm Bureau was unable to articulate any possible basis on which any of the other interpleader defendants could attempt to claim any of the policy proceeds.[6] Even a brief bit of research would—or should—have made it plain to Farm Bureau that the interpleader action was unnecessary. There was no confusion over who the beneficiary was, as was the case in the *Clark Center, Dennis,* and *Primerica* cases, cited above, and there was no other mortgagee named as loss payee in the policy declarations besides Bank of America. The trial court correctly concluded that Farm Bureau's failure to pay the Guyers' losses within a reasonable time subjected the insurer to the statutory 12% penalty and attorney's fees pursuant to section 23–79–208(a). Accordingly, we affirm on direct appeal.

In their sole point on cross-appeal, the Guyers argue that the circuit court erred in granting Farm Bureau's summary-judgment motion on the Guyers' claim that Farm Bureau committed the tort of bad faith. The standard for establishing a claim for bad faith is rigorous and difficult to satisfy. *Unum Life Ins. Co. of Am. v. Edwards,* 362 Ark. 624, 210 S.W.3d 84 (2005) (citing *Delta Rice Mill, Inc. v. Gen. Foods Corp.,* 763 F.2d 1001 (8th Cir. 1985)). In order to state a claim for bad faith, one must allege that the defendant insurance company engaged in affirmative misconduct that was dishonest, malicious, or oppressive. *Edwards, supra; State Auto Prop. & Cas. Ins. Co. v. Swaim,* 338 Ark. 49, 991 S.W.2d 555 (1999); *Aetna*

---

6. In fact, after acknowledging that none of the parties had yet attempted to execute on any of the outstanding liens or mortgages, counsel for Farm Bureau was asked by the court where there was "something [in the policy] that says [Farm Bureau] owe[s] money to a judgment creditor," and counsel conceded that there was "not anything in the policy."

*Cas. & Sur. Co. v. Broadway Arms Corp.,* 281 Ark. 128, 664 S.W.2d 463 (1983). The supreme court has defined "bad faith" as "dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." *Swaim, supra.*

Mere negligence or bad judgment is insufficient so long as the insurer is acting in good faith. *Id.; Stevenson v. Union Std. Ins. Co.,* 294 Ark. 651, 746 S.W.2d 39 (1988). The tort of bad faith does not arise from a mere denial of a claim; there must be affirmative misconduct. *Edwards, supra.* In *Swaim, supra,* the supreme court explained further:

> [T]his court has held on several occasions that a mistake on an insurance carrier's part or negligence or confusion or bad judgment will not suffice to substantiate the tort of bad faith. For example, we have held that nightmarish red tape, an abrupt attitude evidenced by an insurance representative about higher premium costs following cancellation of a group policy, and confusion over the referral process did not amount to bad faith. Nor did the fact that an insurance company waited three months to investigate a claim.
>
> Examples of cases where we have found substantial evidence of bad faith include where an insurance agent lied by stating there was no insurance coverage; aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's wrecked car; and where a carrier intentionally altered insurance records to avoid a bad risk.

*Swaim,* 338 Ark. at 58, 991 S.W.2d at 560–61 (internal citations omitted).

In this case, the Guyers claim that Farm Bureau and its adjuster, Matt Cossey, acted in bad faith in their dealings with the Guyers. In an affidavit offered in support of the Guyers' motion for summary judgment, Jim Guyer complained that Cossey told the Guyers not to stay in a hotel after the fire, which occurred on March 24, 2010, because it would use up too much of the temporary living expenses provided in the insurance policy. As a result of Cossey's representation, the Guyers moved into an apartment and had to take turns sleeping on the couch because of inadequate bed space. When the Guyers asked Cossey for payment of the personal-property portion of the policy proceeds, Cossey refused to pay and would not give a reason. When asked if Farm Bureau could pay off the mortgage to avoid additional expenses, Cossey told the Guyers that his boss, Macey Harpo, had told him not to pay anything.

The Guyers rented a house in Blytheville on April 20, 2010, but they had to post-date a check for the rent and deposit because they were in "dire financial straits." As Cossey had told the Guyers that Farm Bureau was checking for liens on the property, Jim Guyer asked Cossey on April 21, 2010, if they had heard anything from the lawyers. Cossey told Guyer to call Harpo; Harpo, however, was unavailable. The landlords on the Guyers' rental house cashed the Guyers' deposit check early, and it bounced, so Guyer called Cossey and told him that they were "desperately tight on money for house and furniture." Cossey informed Guyer that there were still some "boxes that needed to be filled in" on the proof-of-loss form.

On April 30, Guyer asked Cossey if the money had been sent yet, and Cossey said that it had not. On May 3, Cossey advised Guyer that the lien search had been completed, but now the insurance company was starting to prepare a title opinion; Cossey said that Farm Bureau would pay when the title opinion was completed. Cossey also said that he mailed a check for the furniture and house rental, but Guyer complained that Cossey sent it to the

wrong address and, when the check was returned to Farm Bureau, Cossey refused to "overnight" the check back to Guyer, even though Guyer offered to pay for expedited shipping.

On May 7, 2010, the Guyers moved into a Holiday Inn after Farm Bureau agreed to "allow for a direct bill." On May 10, Cossey informed the Guyers that, once they moved into their rental house, Farm Bureau would no longer pay for meals; in addition, Farm Bureau would pay for only two months' worth of furniture rentals, and after that, the Guyers would be expected to buy their own furniture.

The Guyers continued to attempt to contact Cossey and Harpo about the progress of the title opinion, but Harpo directed them to call Farm Bureau's attorney. The attorney spoke briefly to Jim Guyer but never called back after that.

On May 19, 2010, Jim Guyer again called Harpo to see if the title opinion was finished; Harpo said that it was, but even though the search "did not turn up anything new," Farm Bureau was still not going to pay. When Guyer contacted Farm Bureau's attorney, the attorney advised that Farm Bureau was going to interplead the entire amount of the policy. The complaint in interpleader was filed that same day.

On appeal, the Guyers argue that Farm Bureau's bad faith was evident in Cossey's "coercive conduct" in inducing them to move into an apartment that was too small; that Cossey lied to or misled the Guyers about the coverage that was available to them; that Farm Bureau unreasonably delayed payments on their temporary living expenses; that Farm Bureau refused to pay for furniture rentals for more than one or two months once the Guyers moved into the rental house; that Cossey demanded the Guyers move into the rental house, even though they did not have furniture; and that Farm Bureau

refused to pay the balance due on the mortgage to Bank of America as required by the terms of the policy.

These complaints, while serious and undoubtedly egregious and hurtful to the Guyers, do not rise to the level of bad faith but are more akin to the "bad judgment" or "nightmarish red tape" that the *Swaim* court held did not constitute bad faith. None of the actions about which the Guyers complain seems to evince "affirmative misconduct" or "dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." *Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, 429, 64 S.W.3d 720, 723 (2002). As noted above, the standard for establishing bad faith is difficult to satisfy, and on these facts, we are unable to conclude that the circuit court erred in granting Farm Bureau's summary-judgment motion on the Guyers' bad-faith claim.

Affirmed on direct appeal; affirmed on cross-appeal.

VAUGHT, C.J., and GLADWIN, J., agree.