SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CV–13–255

| | |
|---|---|
| NEWTON W. DORSETT AND DIAMOND TRANSPORT & DRILLING, LLC<br><br>APPELLANTS<br><br>V.<br><br><br>DONALD BUFFINGTON AND RICHARD WILLIAMSON<br>APPELLEES | Opinion Delivered September 26, 2013<br><br>APPEAL FROM THE LAFAYETTE COUNTY CIRCUIT COURT, [NO. CV-09-118-2]<br><br>HONORABLE MICHIAL BRENT HALTOM, JUDGE<br><br>AFFIRMED IN PART; REVERSED IN PART. |

**JIM HANNAH, Chief Justice**

Appellant Newton W. Dorsett appeals an order of the Lafayette County Circuit Court awarding damages, attorney's fees, and prejudgment interest to appellee Donald Buffington. On appeal, Dorsett argues that (1) Buffington's action against Dorsett was barred by the doctrine of res judicata, (2) the award of damages is contrary to the law, (3) the award of prejudgment interest was in error, and (4) Buffington failed to prove conversion as a matter of law. We affirm in part and reverse in part.

This appeal concerns disputes among the owners of an oil–drilling rig. Buffington owns 62.5% of the rig from his original interest and by assignment of the interest of another owner, Richard Williamson.[1] Dorsett, through his company, Diamond Transport & Drilling,

---

[1]Williamson's assignment of his interest to Buffington took place during the pendency of the disputes; therefore, he was a party to some, but not all, of the litigation.

LLC ("Diamond"), owns the remaining 37.5% of the rig.

This is the fourth lawsuit among the owners. The first case, filed in the United States District Court for the Western District of Arkansas, Texarkana Division, was brought by Buffington and Williamson against Dorsett. The second case, brought by Diamond against Buffington and Williamson, was filed in the First Judicial District Court of Caddo Parish, Louisiana. Those two lawsuits were resolved when the parties entered into a Compromise Agreement in January 2008. The third case, filed on November 13, 2009, in the Lafayette County Circuit Court, was brought by Buffington against Diamond and Dorsett. In his complaint, Buffington alleged causes of action for breach of contract and conversion arising out of the Compromise Agreement.[2] The fourth case involved a "Rule To Enforce Compromise" filed by Diamond against Buffington and Williamson on September 21, 2010, in Caddo Parish, Louisiana. In that case, Diamond sought an order enforcing the Compromise Agreement, including a finding that Diamond and Dorsett had fulfilled their obligations under the agreement.

Buffington and Williamson filed a motion to stay the Louisiana proceedings, citing the pendency of the previously filed action in the Lafayette County Circuit Court. The Louisiana court denied the motion to stay, and on April 28, 2011, entered a judgment ("Louisiana Judgment") finding, inter alia, that the Compromise Agreement remains in effect; that no party has intentionally breached the provisions of the Compromise Agreement; and that

---

[2]In an amended complaint, Buffington alleged claims of fraud against Diamond and Dorsett. The circuit court directed a verdict against Buffington on the fraud claims, and he does not appeal.

SLIP OPINION

Diamond complied with the provisions of the Compromise Agreement regarding the production of an inventory sheet when it furnished an inventory during a March 28, 2011 hearing. In the Louisiana Judgment, the court also ordered Diamond to maintain the rig in accordance with the provisions of the Compromise Agreement; ordered that all parties continue to comply with the provisions of the Compromise Agreement; and stated that the rights of all parties to make a claim, upon sufficient proof, pursuant to the Compromise Agreement, shall be reserved.

Dorsett and Diamond filed a motion for summary judgment in the Lafayette County Circuit Court, contending that, in light of the Louisiana Judgment, the action in the circuit court was barred by the doctrine of res judicata. The circuit court granted partial summary judgment for Diamond, finding that res judicata applied to all issues except conversion. The circuit court denied summary judgment as to Dorsett.

The case proceeded to trial, and the jury found in favor of Buffington on his breach-of-contract claim against Dorsett, awarding Buffington $335,000 in damages for lost profits. The jury also found for Buffington on his conversion claims against Dorsett and Diamond, but awarded no damages on those claims. The circuit court entered judgment against Dorsett, awarding Buffington $335,000 in actual damages, attorney's fees of $99,630, and prejudgment interest of $100,591.77, for a total judgment of $535,221.77. Dorsett now brings this appeal.

## I. *Res Judicata*

Dorsett first contends that the circuit court erred in failing to dismiss the breach-of-

SLIP OPINION

contract claim against him under the doctrine of res judicata. He claims that Buffington's Arkansas action was precluded by the Louisiana Judgment. We conclude that res judicata did not bar Buffington's action against Dorsett. Res judicata, whether claim preclusion or issue preclusion, does not bar a subsequent action where a party was actually prohibited from asserting a claim in the earlier action or where a court in an earlier action has made an express reservation of rights as to future litigation. *Cater v. Cater*, 311 Ark. 627, 632, 846 S.W.2d 173, 176 (1993).

Here, Buffington was prohibited from asserting a claim for damages in the Louisiana action because the Rule to Enforce Compromise was brought pursuant to Louisiana's summary-proceedings rule, which provides as follows:

Summary proceedings may be used for trial or disposition of the following matters only:

(1) An incidental question arising in the course of judicial proceedings, including the award of and the determination of reasonableness of attorney fees.

(2) An application for a new trial.

(3) An issue which may be raised properly by an exception, contradictory motion, or rule to show cause.

(4) An action against the surety on a judicial bond after judgment has been obtained against the principal, or against both principal and surety when a summary proceeding against the principal is permitted.

(5) The homologation of a judicial partition, of a tableau of distribution or account filed by a legal representative, or of a report submitted by an auditor, accountant, or other expert appointed by the court; and an opposition to any of the foregoing, to the appointment of a legal representative, or to a petition for authority filed by a legal representative.

(6) A habeas corpus, mandamus, or quo warranto proceeding.

(7) The determination of the rank of mortgages, liens, and privileges on property sold judicially, and of the order of distribution of the proceeds thereof.

(8) The original granting of, subsequent change in, or termination of custody, visitation, and support for a minor child; support for a spouse; injunctive relief; support between ascendants and descendants; use and occupancy of the family home or use of community movables or immovables; or use of personal property.

(9) An action to annul a probated testament under Article 2931.

(10) An action to enforce the right to a written accounting provided for in R.S. 9:2776.

(11) An action for dissolution or specific performance of a compromise entered pursuant to Article 1916(B) or by consent judgment.

(12) All other matters in which the law permits summary proceedings to be used.

La. Code Civ. Proc. art. 2592.

> [W]hen a settlement of litigation is sought to be enforced, a motion to enforce that settlement is properly characterized as "an incidental question arising in the course of [that] litigation" which may properly be addressed by a summary proceeding (i.e. a motion) rather than by a completely new civil action. La. Code Civ. Proc. art. 2592(1). "Generally, summary proceedings are allowed in instances where the issue to be resolved is narrow and/or the need for rapid adjudication is great." *Clay v. Clay*, 389 So. 2d 31, 35 (La. 1979). Motions for enforcement of litigation settlements, which settlements must be either in writing or recited on the record in open court, La. Civ. Code art. 3071, are apt to present narrow issues. As to the need for rapidity, settlements of litigation, which are to be encouraged, are made more likely when parties have confidence that they can be enforced, if necessary, by the most expeditious procedure the law allows.

*Banque De Depots v. Bozel Mineracao E Ferroligas*, 728 So. 2d 533, 538 (La. Ct. App. 1999).

The Supreme Court of Louisiana has held that the summary-proceedings rule "does not provide for the recovery of damages in summary proceedings," and "[d]amages, in the absence of special provisions, may only be recovered via ordinaria." *Major v. Hall*, 263 So.

2d 22, 24 (La. 1972).[3] *See also Graci v. Gasper John Palazzo, Jr., L.L.C.*, ___So.3d ___ (La. Ct. App. 2013) (holding that, because plaintiffs could not argue their claims for damages during a summary proceeding for eviction, as those damages claims must be brought in an ordinary proceeding, plaintiffs' claims for damages and mitigation in subsequent action were not barred by the doctrine of res judicata); *In re Succession of Carroll*, 72 So. 3d 384 (La. Ct. App. 2011) (holding that an action to annul probated testament, which was required to be brought by a summary proceeding, could not be brought with a suit for damages, which must be brought by an ordinary proceeding); *Horacek v. Watson*, 934 So. 2d 908 (La. Ct. App. 2006) (holding that res judicata did not bar lessee's action for damages arising out of an eviction because the eviction action was filed in a summary proceeding and the lessee's subsequent suit for damages required suit by ordinary process). Here, Buffington could not seek damages in the summary proceeding; therefore, his action in Arkansas court was not barred by the Louisiana Judgment.

Moreover, the Louisiana Judgment contained an express reservation of rights:

This Court recognizes that legal matters are currently pending before the Court(s) in the State of Arkansas which may consist of the same or similar issues involving parties subject of these proceedings.

Although [Diamond] has sold and/or utilized certain component parts of the subject drilling rig, [Diamond] has maintained the subject drilling rig in accordance with the provisions of the Compromise. Upon sufficient proof, [Buffington and Williamson] may have a future claim for reimbursement.

FURTHER, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that

---

[3]In Louisiana trial courts, three different modes of procedure are used in civil matters: ordinary, summary, and executory. La. Code Civ. Proc. art. 851.

[Diamond] and [Buffington and Williamson] shall continue to comply with the provisions of the Compromise specifically regarding the sale of the subject drilling rig.

FURTHER, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the right(s) of all parties to make a claim, upon sufficient proof, pursuant to the Compromise shall be reserved.

It is well settled that an express reservation of rights as to litigation on a certain item preserves that subject for future adjudication. *Miles v. Teague*, 251 Ark. 1059, 1061, 476 S.W.2d 245, 247 (1972). In sum, because Buffington was prohibited from bringing a claim for damages in the Louisiana summary proceeding and because the Louisiana Judgment contained an express reservation of rights to future litigation, we hold that res judicata did not bar Buffington's action in Arkansas court.

## II.  *Damages*

Dorsett next challenges the jury's award of damages on the contract claim. The jury found Dorsett liable for breach of contract and awarded Buffington $335,000 in damages. The instruction submitted to the jury on damages was "the value of any profits lost in connection with the agreed sale of the drilling rig." Dorsett moved for directed verdict and for judgment notwithstanding the verdict to overturn the damages for insufficient proof. The circuit court denied those motions.

At trial, Buffington contended that he suffered lost-profit damages because Dorsett refused to provide the inventory of rig specifications until long after the sales price had been reduced so that only Diamond would receive proceeds from the sale. The Compromise Agreement provided that the initial agreed sales price of the rig was $6.5 million, and the price would be reduced by $325,000 every sixty days until the price reached $5.2 million.

SLIP OPINION

Subsequent sales-price reductions would take place at ninety-day intervals. Diamond would receive the first $4.5 million from the sale, regardless of when it was sold, with the remainder being split evenly between Buffington and Williamson, whose share of the sales proceeds diminished over time and eventually zeroed out. Buffington provided the following table in his brief to illustrate the formula for calculating sales proceeds:

| Date of Sale | Agreed Sales Price | Buffington and Williamson's share of sales proceeds |
|---|---|---|
| January 10–March 9, 2008 | $6.5 million | $1 million |
| March 10–May 8, 2008 | $6.175 million | $837,500 |
| May 9–July 7, 2008 | $5.805 million | $675,000 |
| July 8–September 5, 2008 | $5.25 million | $512,000 |
| September 6–December 4, 2008 | $5.2 million | $350,000 |
| December 5, 2008–March 5, 2009 | $4.875 million | $187,500 |
| March 6–June 3, 2009 | $4.5 million | $50,000 |
| June 4, 2009 forward | continued reductions | –0– |

Williamson, who had assigned his interest to Buffington in 2009, was not a plaintiff in this action, but he testified at trial. Williamson stated that he had more than twenty years of experience in buying and selling oil equipment and that, based on his experience, the first thing a prospective buyer requests is the rig inventory. He testified that, without the inventory, a seller could not expect to get a firm offer from a buyer because "people [are not] generally interested in spending millions of dollars on a rig without seeing the inventory."

According to Williamson, attempting to sell a rig without a rig inventory was "like going fishing without bait." Williamson stated that the sale of a rig usually closes within thirty to forty-five days after the rig inventory and specifications have been provided. Williamson testified that, in February 2008, A.T. Green, an oil-rig broker, contacted him about the rig for sale, so Williamson then called Dorsett and asked him where the inventory was and Dorsett told him that he would try to get it. According to Williamson, Dorsett did not provide him with the inventory.

Dorsett testified that Williamson called him in February 2008, but he could not recall whether Williamson told him he had a buyer interested in purchasing the oil rig for $6.5 million. He also stated that he could not remember whether Williamson asked him for the inventory.

Buffington testified at trial that "[y]ou can't get [a buyer] until you get them an inventory." He testified that he could not say "for certain" that, even if they had an inventory, they would have sold the rig, but "[w]e probably would have had a chance to sell it, if we had had the inventory like we was supposed to." Buffington stated that they never had a firm offer on the oil rig because they did not have the inventory from Dorsett and, as such "[o]ur hands [were] tied."

Dorsett contends that the jury's award of damages for lost profits must be reversed because it was based on speculation and conjecture. He maintains that damages for lost profits are based on the loss of actual or imminent sales and cannot be based on the loss of potential sales.

SLIP OPINION

The parties stipulated that Louisiana law governed their claims for breach of contract and damages. In Louisiana, lost profits are recoverable in an action for breach of contract if the amount can be proved with reasonable certainty. *Scenicland Constr. Co., LLC v. St. Francis Med Ctr., Inc.*, 936 So. 2d 247, 252 (La. Ct. App. 2006). Loss-of-profit awards may not rest on speculation or conjecture unless direct evidence is not available to establish this element of damage. *Id.* Customary or foreseeable profit may be resorted to as a measure of damage where there is no direct evidence of the exact extent of loss. *Id.* Broad latitude is given in proving lost profits because this element of damages is often difficult to prove and mathematical certainty or precision is not required. *Breechen v. News Group, L.P.*, 105 So. 3d 1011, 1029–30 (La. Ct. App. 2012).

We agree with Buffington's assertion that the very nature of Dorsett's breach—failure to provide the required inventory sheet—made it impossible for Buffington to secure a firm offer on the rig while time was of the essence and that if Dorsett's argument were accepted, it would be impossible to prove damages caused by his breach under the circumstances. In addition, we are not persuaded by Dorsett's contention that Buffington's claim for damages fails because lost profits cannot be based on opinion testimony from the plaintiff or other injured parties. In this case, Buffington's proof on damages came in large part from Williamson, who was not a party to the case. Moreover, the absence of independent corroborative evidence of loss of profits is not always fatal to such a claim; rather, the absence goes to the weight of evidence. *Ed Bulliard Co. v. Foretich-Zimmer Constr. Co.*, 451 So. 2d 29, 31 (La. Ct. App. 1984). We hold that, in this case, there is substantial evidence to support the



award of damages.

### III. *Prejudgment Interest*

The circuit court awarded Buffington $100,591.77 in prejudgment interest. Dorsett states that, although the circuit court did not provide a calculation for the prejudgment interest in the judgment, the award equals ten percent per annum on the $335,000 judgment for a period of three years from November 10, 2008, through November 11, 2011. Dorsett claims that this award is contrary to law and that Buffington is not entitled to prejudgment interest because his damages were not definitely ascertainable as to date or amount of loss.

Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. *Ozarks Unlimited Resources Co-op., Inc. v. Daniels*, 333 Ark. 214, 224, 969 S.W.2d 169, 174 (1998). Prejudgment interest is allowable if the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion. *Woodline Motor Freight, Inc. v. Troutman Oil Co.*, 327 Ark. 448, 453, 938 S.W.2d 565, 568 (1997). If the damages are not by their nature capable of *exact determination*, both in time and amount, prejudgment interest is not an item of recovery. *Mitcham v. First State Bank of Crossett*, 333 Ark. 598, 601–02, 970 S.W.2d 267, 269 (1998); *Kutait v. O'Roark*, 305 Ark. 538, 540–41, 809 S.W.2d 371, 373 (1991) (noting that our cases have stressed the requirement of certainty as to time and amount and that vague assertions fail to comply with that requirement).

Based on the record before us, we conclude that the circuit court erred in awarding

SLIP OPINION

prejudgment interest. The jury awarded damages based on Buffington's lost profits from the failure to sell the rig under the Compromise Agreement, which expressly provided a formula for Buffington's compensation upon a sale. The formula depended on a "step down" scale based on the actual sales price of the rig and the date of sale. If the rig was sold between September 6 and December 4, 2008, Buffington was entitled to $350,000. If the rig was sold between December 5, 2008, and March 5, 2009, Buffington was entitled to $187,500. From the evidence, the jury determined that Dorsett had breached the contract, and a method for determination of Buffington's damages existed, per the parties' "step down" formula. Under this formula, there is no calculation that produces $335,000—the amount of damages awarded by the jury—and the *exact* time of Buffington's loss was not determined by the jury, nor was the jury asked to make this determination. Because the damages were not by their nature capable of *exact determination*, both in time and amount, the circuit court erred in awarding prejudgment interest.

## IV. *Conversion*

Finally, Dorsett contends that this court must reverse the conversion judgment and dismiss the conversion claim against him because Buffington failed to prove an essential element of conversion—damages. Although the jury returned a verdict in favor of Buffington on his conversion claim, it awarded no damages for the claim.

Per the parties' agreement, the circuit court instructed the jury on Buffington's conversion claim, pursuant to Louisiana law:

An action for conversion is grounded on the unlawful interference with the ownership or possession of a movable. A conversion is committed when any of the

following occurs: (1) possession is acquired in an unauthorized manner, (2) the movable is removed from one place to another with the intent to exercise control over it, (3) possession of the movable is transferred without authority, (4) possession is withheld from the owner or possessor, (5)the movable is altered or destroyed, (6) the movable is used improperly, or (7) ownership is asserted over the movable.[4]

A review of the jury instruction reveals that the establishment of damages was not an essential element to a conversion claim. That Buffington failed to actually receive damages is immaterial. We affirm the judgment for conversion.

Affirmed in part; reversed in part.

*Ned A Stewart, Jr.* and *Williams & Anderson PLC*, by: *Jess Askew III*, *Andrew King*, and *Jamie K. Fugitt*, for appellant.

*Mercy Carter Tidwell, L.L.P.*, by: *W. David Carter*, for appellee.

---

[4]As authority for the elements of conversion, the jury instruction cited the Louisiana Supreme Court's decision in *Dual Drilling Co. v. Mills Equip. Inv., Inc.*, 721 So. 2d 853 (La. 1998).