# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3755

_____

Simmons Foods, Inc.

*Plaintiff - Appellee*

v.

Industrial Risk Insurers, an Unincorporated for Profit Association; Swiss
Reinsurance America Corporation; Westport Insurance Corporation; Ironshore
Specialty Insurance Company

*Defendants - Appellants*

_____

No. 15-3845

_____

Simmons Foods, Inc.

*Plaintiff - Appellant*

v.

Industrial Risk Insurers, an Unincorporated for Profit Association; Swiss
Reinsurance America Corporation; Westport Insurance Corporation; Ironshore
Specialty Insurance Company

*Defendants - Appellees*

_____

Appeals from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: January 11, 2017
Filed: July 11, 2017
_____

Before RILEY,[1] Chief Judge, LOKEN and BENTON, Circuit Judges.
_____

RILEY, Chief Judge.

In 2011, Simmons Foods, Inc., made a claim under two property insurance policies it had with Industrial Risk Insurers and Ironshore Specialty Insurance Company (collectively, the insurers).[2] The insurers denied a portion of the claim that related to one of Simmons's damaged properties in Oklahoma, which eventually resulted in Simmons filing suit in Arkansas where Simmons is headquartered. The insurers moved to dismiss the action based on policy provisions requiring any action be brought within one year of the date of loss, a window that had closed some time earlier. The district court applied Arkansas law—which voids such contractual provisions, unlike Oklahoma law—and denied the motion. The case went to trial, and after the jury verdict Simmons recovered $2,817,380.11 of the $3,584,041.90 it sought. The district court then ordered the insurers to pay prejudgment interest. The district court rejected Simmons's attempt to recover an additional 12% in damages

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

[2]The member companies of Industrial Risk Insurers, Westport Insurance Corporation and Swiss Reinsurance America Corporation, were also named defendants and are therefore included as "insurers." Also, the parties refer to a single claim, notwithstanding the fact there are two policies, apparently because a single event—a snowstorm—was involved. Because it does not affect our analysis, we will do the same.

and also attorney fees, finding Simmons failed to clear the statutory threshold. See Ark. Code Ann. § 23-79-208. Neither side is satisfied with how things were resolved. The insurers appeal the denial of their motion to dismiss and the award of prejudgment interest. Simmons cross-appeals the decision not to award statutory damages or attorney fees. We affirm the denial of the insurers' motion to dismiss, reverse and vacate the award of prejudgment interest, and affirm the rejection of Simmons's claims for statutory damages and attorney fees.

## I.    BACKGROUND

Simmons is a large, family-owned poultry and pet-food company that is incorporated in Arkansas and headquartered in Benton County, Arkansas. The insurers issued two materially identical property insurance policies to Simmons, with a coverage term from September 1, 2010, to September 1, 2011, and a joint liability limit of $100 million. According to Simmons's Assistant Risk Manager, the policies were "negotiated, entered, issued, and delivered to Simmons at its corporate office in Benton County, Arkansas," and the policy premiums were paid from Arkansas. The policies covered 51 properties Simmons owned, specifically: 21 in Arkansas, 13 in Oklahoma, and 17 scattered throughout Kansas, Missouri, New Jersey, and Canada.

In February 2011, a snowstorm swept through Oklahoma and Missouri and damaged several of Simmons's covered buildings and farms. Simmons made a claim for all of its damaged properties under the policies, which provided that the insurers' liability "shall not exceed the smaller of the following: 1. the cost to repair, rebuild or replace on the same site with new materials of like kind and quality, whichever is the smallest; 2. the actual expenditure incurred in repairing, rebuilding or replacing on the same or another site, whichever is the smallest." The parties resolved most of the claim without issue. The exception was a dispute about Simmons's can-making facility in Fort Gibson, Oklahoma, a 300-foot by 400-foot metal structure that sustained considerable damage to its roof and supporting columns. The parties disagreed on how the policies covered the situation—Simmons contended it was

entitled to recover the cost to rebuild the structure, while the insurers asserted they were only obligated to pay for the cost to repair specified damages. Simmons elected to rebuild the facility despite this impasse, and eventually submitted invoices to the insurers totaling $7,367,859.12. The insurers maintained their position and remitted their final payment in July 2013, having paid only the $3,879,097.99 they initially offered Simmons.[3] Simmons sent a letter stating its disagreement and demanding $3,584,041.90. The insurers rejected this last-ditch effort to avoid litigation.

Simmons filed suit in the Western District of Arkansas on September 20, 2013, seeking $3,584,041.90 for the insurers' alleged breach of contract.[4] See 28 U.S.C. § 1332(a)(1) (diversity jurisdiction). The insurers moved to dismiss the action, see Fed. R. Civ. P. 12(b)(6), based on a time-limitation provision in the policies that provided: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . *unless commenced within twelve months next after inception of the loss*." (Emphasis added). If enforced, the limitation provision could bar Simmons's suit given that the lawsuit was filed over 31 months after the snowstorm (i.e., 19 months too late). Simmons countered that Arkansas law applied, making the provision unenforceable and the action timely. The district court agreed with Simmons and denied the motion because it considered "the timeliness of the suit [to be] a procedural matter" and therefore "governed by the law of the forum." The insurers disagreed with this classification and asked the district court to certify to our court whether the timeliness issue is procedural or substantive. See 28 U.S.C. § 1292(b) (interlocutory appeal). The district court declined to do so,

---

[3]Of this amount, $1,170,482.54 was for temporary repairs to the Fort Gibson facility. The remaining $2,708,615.45 reflects what the insurers' experts estimated it would cost to repair the structure.

[4]Note the math does not add up: the $7,367,859.12 Simmons claimed minus the $3,879,097.99 the insurers paid does not equal the $3,584,041.90 Simmons sought. That is, Simmons's demand was about $95,000 too high. We discuss the significance of this fateful miscalculation later. See infra, section II.C.

-4-

reasoning that regardless of whether the issue was procedural (as the district court initially found) or substantive (as the insurers urged) it would be governed by Arkansas law. The case moved forward.

At trial, the parties presented conflicting evidence on the two issues the jury needed to decide. First, the parties continued their quarrel over whether the facility could have been repaired. Second, if the rebuild were proper, the parties disputed whether Simmons was entitled to the full $3,584,041.90 it sought. On this point the insurers claimed Simmons's figure included certain "betterments" that were not covered by the policies—for example a new dock door, additional exhaust fans, and higher-quality steel—while Simmons posited these expenses were either required by local code or would save money in the long run. Following the jury's findings, Simmons was entitled to $2,817,380.11 in damages. The district court later awarded Simmons prejudgment interest. See Ark. Code Ann. § 4-57-101(d) (prejudgment interest); see also Woodline Motor Freight, Inc. v. Troutman Oil Co., Inc., 938 S.W.2d 565, 568 (Ark. 1997). The district court rejected Simmons's request for additional relief under Ark. Code Ann. § 23-79-208 (statutory damages and attorney fees), finding Simmons fell short of the statutory threshold "[b]y the slightest of margins." We must now determine whether the district court was correct to: (1) apply Arkansas law and deny the insurers' motion to dismiss; (2) award Simmons prejudgment interest; and (3) reject Simmons's request for statutory damages and attorney fees. See 28 U.S.C. § 1291 (appellate jurisdiction).

## II.    DISCUSSION
### A.    Motion to Dismiss

The insurers first contend Simmons's suit was untimely and therefore should have been dismissed. Whether this contention has merit hinges largely on which state's law we must apply. Under Arkansas law, an insured has five years to sue an insurer for breach of a property insurance policy and "[a]ny stipulation or provision in the policy or contract requiring the action to be brought within any shorter time or

-5-

be barred is void." Ark. Code Ann. § 23-79-202; id. § 16-56-111(a). Thus, under Arkansas law, Simmons's suit was timely, and the insurers do not suggest otherwise. The insurers argue Oklahoma law applies, and Oklahoma law allows courts to enforce limitation provisions like the one here.[5] See, e.g., Clipperton v. Allstate Ins. Co., 151 F. App'x 652, 655 (10th Cir. 2005). The district court applied Arkansas law and denied the motion to dismiss, both of which are decisions we review de novo. See, e.g., Carton v. Gen. Motors Acceptance Corp., 611 F.3d 451, 454-55 (8th Cir. 2010). In deciding what law applies, federal courts exercising diversity jurisdiction apply the forum state's choice-of-law principles—here, that is Arkansas. See Am. Fire & Cas. Co. v. Hegel, 847 F.3d 956, 959 (8th Cir. 2017).

With that in mind, the first step is to determine whether the timeliness issue is procedural or substantive in nature. If it is procedural, then Arkansas law applies; if it is substantive, then further analysis is needed. See Travis Lumber Co. v. Deichman, 319 S.W.3d 239, 255 (Ark. 2009). The insurers posit "[e]very court to consider the enforceability of a suit limitation provision in an insurance contract has treated it as a substantive, not procedural, issue." However the insurers offer scant support for this bold claim—they cite two out-of-circuit, district-level decisions.[6]

_____

[5]Simmons makes an alternative argument that its suit was timely even if Oklahoma law applies, because the time period was equitably tolled or waived during the continued negotiations and claim-adjustment period. We conclude Oklahoma law does not apply and therefore express no view as to whether Simmons's suit was timely under Oklahoma law.

[6]See Baillie Lumber Co., L.P. v. Ace Am. Ins. Co., No. 11-CV-995A, 2014 WL 6997524, at *8 (W.D.N.Y. Dec. 10, 2014); Simons v. N. Cent. Crop Ins., Inc., No. 98 c 1099, 1998 WL 321466, at *2-3 (N.D. Ill. June 12, 1998). But see, e.g., Sun Ins. Office, Ltd. v. Clay, 133 So. 2d 735, 738 (Fla. 1961) (determining a Florida statute voiding limitation provisions always applies in Florida courts provided there is personal jurisdiction); Galliher v. State Mut. Life Ins. Co., 43 So. 833, 834 (Ala. 1907) (holding Georgia law governed the "'validity, interpretation, and construction'" of a Georgia contract, but forum law governed "all remedies on contracts" (quoting

-6-

More importantly, the statement almost directly conflicts with a case from the only court whose classification controls: the Arkansas Supreme Court.

In Gulf Insurance v. Holland Const., an Oklahoma-based insured obtained a property insurance policy from a Texas-based insurer. Gulf Ins. Co. v. Holland Const. Co., 236 S.W.2d 1003, 1004 (Ark. 1951). The insured made a claim under that policy when some of its property was damaged in Arkansas, and the insurer denied coverage. See id. Three years passed from the date of the incident before the insured filed suit in Arkansas state court. See id. Like here, the insurer pointed to a limitation provision within the policy stating: "'No suit action on this policy, for the recovery of any claim, shall be sustainable in any court . . . unless commenced within twelve months next after the happening of the loss.'" Id. at 1005. Also like here, the insurer argued Oklahoma law applied and allowed the clause to be enforced. See id. The Arkansas Supreme Court disagreed:

> [T]he period of limitation in which suit may be filed . . . is a matter of procedure and not of substantive law. . . . Where the statutes of the forum make void all agreements whereby the time for the bringing of actions is fixed at a period less than that prescribed by law, a contractual stipulation made in another jurisdiction is not available as a defense.

Id. at 1006 (emphasis added) (citation and internal quotation marks omitted). The Arkansas Supreme Court declined to give effect to the limitation provision and affirmed the jury verdict in favor of the insured. See id.

---

Jones v. Jones, 18 Ala. 248, 250 (1850))). We also note both Baillie and Simons seem to skip the procedural/substantive question altogether, and neither of these cases is controlling here.

The insurers try to avoid a similar result here by contending in oral argument Gulf Insurance is "distinguishable on many, many grounds."[7] We disagree. At oral argument, the insurers first suggested Gulf Insurance "was going to be governed by Arkansas law under any sort of choice-of-law analysis" because the damage occurred in Arkansas. Whether some other choice-of-law principle would have called for application of Arkansas law is irrelevant, because the Arkansas Supreme Court did not rely on any such other principle—it relied solely on its determination that the timeliness issue was procedural and governed by the forum's law. See id. We are also unpersuaded by the insurers' attempt to highlight slight differences between the limitation provision in Gulf Insurance and the one here.[8] The operative language struck down by the Arkansas Supreme Court was a clause shortening the time an insured could sue an insurer. That language similarly exists here.

Last, the insurers orally argued "the law has come a long way since the Gulf case as to how [courts] treat suit-limitation provisions." Maybe so. However, "'[a]s a federal court, our role in diversity cases is to interpret state law, not to fashion it.'" Wivell v. Wells Fargo Bank, N.A., 773 F.3d 887, 896 (8th Cir. 2014) (quoting Dannix Painting, LLC v. Sherwin-Williams Co., 732 F.3d 902, 905 (8th Cir. 2013)). When dealing with an issue of state law we are bound by rulings on that issue from

---

[7]Despite suggesting "[e]very court" has found limitation provisions to be substantive, the insurers neglected to cite Gulf Insurance even once in their briefs. The insurers' only attempt to distinguish Gulf Insurance came during oral argument.

[8]The policy in Gulf Insurance contained a fail-safe clause of sorts in that it required suits be commenced within a year of the loss, "'*provided* that where such *limitation* of time is *prohibited by the laws of the State Wherein this policy is issued*, then in that event no suit or action under this policy, shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state.'" Id. at 1005 (emphasis added). The Arkansas Supreme Court did not address this language, probably because the proviso was not applicable—the policy was not issued in Arkansas. See id. at 1004-06.

-8-

the state's highest court. See id. at 896-97. We are faced with an issue of Arkansas law, and the Arkansas Supreme Court has decided that issue, so we are bound by that decision regardless of whether we think it wise or in accordance with the supposed national trend. If the Arkansas Supreme Court or legislature wants to change state law, then they can do so—we cannot. Simmons's suit was timely, and the district court was right to deny the insurers' motion to dismiss.

## B.    Prejudgment Interest

The insurers next argue Simmons is not entitled to prejudgment interest, which is another issue we decide (this time without dispute) under Arkansas law. See Maddox v. Am. Airlines, Inc., 298 F.3d 694, 699 (8th Cir. 2002). "Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment." Dorsett v. Buffington, 429 S.W.3d 225, 232 (Ark. 2013). A prevailing plaintiff is entitled to prejudgment interest "if the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion." Id. However "[i]f the damages are not by their nature capable of *exact determination*, both in time and amount, prejudgment interest is not an item of recovery." Id. at 232-33.

The parties disagree about how these rules apply in this case. To the insurers, this case is similar to Woodline Motor Freight, Inc. v. Troutman Oil Co., Inc., 938 S.W.2d 565 (Ark. 1997). We agree that case is "instructive." In Woodline, a vehicle driver caused a crash that damaged a convenience store. See id. at 566. The building owner sued.[9] See id. At trial "[t]here was conflicting testimony as to whether the

[9]The tenant also sued for personal property damage (e.g., inventory), which Simmons claims makes Woodline distinguishable. See id. at 566, 569. However, the Arkansas Supreme Court bifurcated its discussion and offered separate rationales for why prejudgment interest was inappropriate for the owner and the tenant. See id. at

building needed to be completely torn down, or whether part of the structure could have been repaired." Id. at 569. The jury awarded $100,000 of the $202,000 the owner sought for property damage. See id. at 566-67. Given that "the estimates to repair or replace [the] building varied substantially," the Arkansas Supreme Court held prejudgment interest was improper because "it was impossible to compute the amount of [the plaintiff's] damages without reliance on opinion or discretion." Id. at 569. In Simmons's case, the jury had to exercise discretion to reach a verdict based on "conflicting testimony" and estimates that "varied substantially" as to Simmons's damages. This suggests "the amount due [Simmons] was neither liquidated as a dollar sum nor ascertainable by fixed standards." Id.

Simmons still maintains prejudgment interest was proper because the policies provided a "method" to ascertain damages: the insurers owed either "the cost to repair, rebuild or replace" the facility or "the actual expenditure incurred in repairing, rebuilding or replacing" the facility, whichever was less. To Simmons, the damages were capable of exact determination because there was "no dispute concerning the amount Simmons spent to replace the building." Thus, once the jury decided what Simmons posits was the only issue at trial—"whether the entire building needed to be replaced at all"—there was no room left for "opinion or discretion," nothing for the jury to ascertain. Dorsett, 429 S.W.3d at 232. But the record and verdict show that was not the case.

The parties stipulated to how much Simmons actually spent on the facility and how much the insurers voluntarily paid Simmons. If the jury simply plugged these figures into Simmons's proffered damages formula, without relying on any opinion or discretion, it would have awarded about $3.5 million in damages. Yet, as Simmons said at oral argument, "juries do what juries do"—the jury awarded Simmons

_____

569. We rely only on the court's discussion as to the owner's claim for prejudgment interest, making this distinction irrelevant.

-10-

$2,817,380.11. Neither party suggested this figure at trial, nor do they offer any explanation on appeal as to how the jury may have reached this sum. "The fact that the jury awarded a lesser amount than requested is not necessarily dispositive, but it is unclear here . . . how the jury arrived at the total damages amount." Yazdianpour v. Safeblood Techs., Inc., 779 F.3d 530, 540 (8th Cir. 2015); cf. Aceva Techs., LLC v. Tyson Foods, Inc., 429 S.W.3d 355, 365-66 (Ark. Ct. App. 2013) (awarding prejudgment interest where the plaintiff recovered less than it sought, but it was clear how the jury calculated damages). The jury could not, and indeed did not, blindly accept every invoice Simmons offered into evidence. The jury had to use its discretion to ascertain which experts to believe, which expenses were covered under the policies, and whether the invoices "'reflected reliable and fair dollar amounts.'" Yazdianpour, 779 F.3d at 540 (quoting Sims v. Moser, 284 S.W.3d 505, 520 (Ark. 2008)). The need for such discretion means Simmons's damages were not capable of exact determination until the jury spoke and the district court entered judgment, and prejudgment interest was not appropriate.[10]

---

[10]We reach this conclusion regardless of our standard of review, an issue upon which the parties disagree (but do not elaborate). The insurers propose de novo review, citing Children's Broadcasting Corp. v. Walt Disney Co., 357 F.3d 860, 868 (8th Cir. 2004). Simmons suggests an abuse-of-discretion standard, pointing to All-Ways Logistics, Inc. v. USA Truck, Inc., 583 F.3d 511, 518 (8th Cir. 2009). We need not reconcile this apparent inconsistency within our precedent, because "[a] district court by definition abuses its discretion when it makes an error of law." Koon v. United States, 518 U.S. 81, 100 (1996).

-11-

## C. Statutory Damages and Attorney Fees

For its part, Simmons claims it should have received statutory damages and attorney fees.[11] Under Ark. Code Ann. § 23-79-208(a)(1), an insurer found to have improperly withheld payment on a claim "shall be liable to pay the holder of the policy . . . , in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." This additional relief is available only "if the amount recovered for the loss is within twenty percent (20%) of the amount demanded or which [was] sought in the suit." Id. § 23-79-208(d)(1).

The Arkansas Supreme Court has made clear the statute is "strictly construed in favor of the party sought to be penalized" and "should not be held to apply except in cases that come clearly within the statute." Primerica Life Ins. Co. v. Watson, 207 S.W.3d 443, 448 (Ark. 2004). Whether this case comes "clearly within the statute" depends on whether Simmons recovered at least 80% of the amount it "demanded" or "sought in the suit." After thorough analysis, the district court found "Simmons fail[ed] to chin this statutory bar, as its net recovery of $2,817,380.11 is only 78.6% of its $3,584,041.90 demand." We review the district court's legal conclusion de novo, and the factual findings supporting it for clear error. See, e.g., Jackson v. Allstate Ins. Co., 785 F.3d 1193, 1206 (8th Cir. 2015).

Simmons proposes two reasons why the district court was wrong. First, Simmons suggests the district court took too narrow a view in deciding what numbers to use. That is, the math should reflect the question posed to the jury: "What . . . was the least amount for which Simmons could have replaced the entire Ft. Gibson Building?" Simmons said this number was $6,098,080, the "amount demanded."

---

[11]The Arkansas Supreme Court has held § 23-79-208 is "a procedural matter," and therefore may be applied regardless of what state's substantive law governs. Shepherd v. State Auto Prop. & Cas. Ins. Co., 850 S.W.2d 324, 329 (Ark. 1993).

The jury found the number to be $5,525,995.56, the "amount recovered." If these numbers are used, then Simmons recovered 90.6% of the amount it sought. But this approach fails to recognize the difference between an insurance claim and a legal claim, and the statutory threshold is concerned with the latter. See Ark. Code Ann. § 23-79-208(d)(1) (referring to the amount sought "*in the suit*" (emphasis added)); Nat'l Standard Ins. Co. v. Westbrooks, 962 S.W.2d 355, 357 (Ark. 1998) ("This court has previously interpreted the language 'amount demanded or which is sought in the suit' as 'the amount sued for.'" (quoting Mut. Relief Ass'n v. Poindexter, 10 S.W.2d 17, 18 (Ark. 1928))). Simmons made an insurance claim, and the insurers denied part of that claim. Simmons then demanded and ultimately sued for the difference, not the entire $6,098,080, a point it repeatedly acknowledges throughout its briefs. This admitted truth is enough to defeat this version of Simmons's argument.

Alternatively, Simmons contends the district court failed to grasp the "substance" of its demand. Notwithstanding the above approach, Simmons says it was "undisputed" Simmons was suing to recover the difference between what it spent to replace the facility and what the insurers voluntarily paid. That difference was $3,488,761.13, and using this as the "amount demanded" would mean a recovery rate of 80.8%. The district court was right to reject this attempt at revisionist history. Given the parties' stipulations, this is the correct difference and appears to be the most Simmons could have recovered. Yet, for some unknown reason, Simmons consistently demanded an amount almost $100,000 more than that. Consider: In its pre-suit demand letter, Simmons sought $3,584,041.90; the complaint stated the suit was for $3,584,041.90, and asked for an additional 12% of that amount as statutory damages; pretrial disclosures and reports reflect this higher number; and the jury was told this was the stipulated amount Simmons was seeking. When the district court mid-trial expressed concern about the origin of this number, Simmons doubled down and reaffirmed that "at the end of the day . . . this lawsuit is for 3.584 million." The closest Simmons came to reducing its demand was in closing arguments when counsel acknowledged some expenses did relate to so-called betterments that were

not technically covered by the policies, but even then Simmons sought to justify the costs. It seems clear to us that all parties operated under the assumption Simmons was seeking $3,584,041.90, and Simmons never made a full and timely attempt to make a "new and lesser demand." Id. at 358. Because Simmons failed to recover at least 80% of that amount, it was not entitled to statutory damages or attorney fees.

## III. CONCLUSION

We affirm the district court's decision to deny the insurers' motion to dismiss, because the limitation provision is procedural and is void under Arkansas law. We reverse and vacate the award of prejudgment interest, because the jury had to exercise discretion in determining Simmons's loss. We affirm the denial of Simmons's request for statutory damages and attorney fees, because Simmons did not recover the statutory threshold of at least 80% of the amount it demanded in the suit.

_____